## Richmond.

CARR v. CARR.

January 28th, 1892.

JUDICIAL SALES.—*Confirmation—Case at bar.*—Until confirmation, a judicial sale is an incomplete bargain. Whether the court will confirm the sale, must depend, in a great measure, on the circumstances of each case. Either party may object; and purchaser, becomes a party to the suit, and may have any mistake corrected by the court;

HELD:

Under the circumstances of this case, there is no error in the refusal to confirm.

Appeal from decree of circuit court of Loudoun county, rendered April 9th, 1890, in the chancery cause of *Carr and others* v. *Carr and others*, upon a question of confirming a sale of the land of Josephus Carr, deceased. The purchasers objecting, the court refused to confirm the sale, and the decedent's heirs appealed. Opinion states the case.

*J. W. Foster* and *Edward Nichols*, for appellants.

*W. E. Garrett* and *J. B. McCabe*, for appellees.

LACY, J., delivered the opinion of the court.

The bill was filed by some of the heirs and distributees and widow of Josephus Carr, deceased, against the other heirs, having for its object the due administration and division and distribution of his estate, real and personal. A decree was

rendered at the April term, 1889, by consent of the parties, for the sale of the decedent's real estate as soon as dower could be assigned, which was done by decree, January, 1890, and John H. Alexander, W. E. Garrett, Edward Nichols and S. C. Chancellor were appointed special commissioners to make the sale.

W. E. Garrett alone executed bond as such special commissioner, and he alone acted in executing the decree of sale.

On the 10th day of March, 1890, the real estate, consisting of two tracts of land, each containing three hundred acres, one called the "Mountain Farm," the other called the "Home Place," was offered for sale by the said commissioner, W. E. Garrett. It was offered under the following plan: The mountain farm was offered first to test the amount it would bring; then the home place was put up in the same way, and neither place to be sold until the real estate was offered as a whole; and if the real estate, as a whole, should command a higher bid than it had commanded when offered separately, then it would be sold as a whole, otherwise not.

Mr. Garrett, the acting special commissioner, and the other gentlemen named as such, but not acting, were lawyers, and were to leave that evening for Richmond, under a telegram calling them to argue a case in this court, so that the acting commissioner, and the others named as such, desired to complete the matter of sale early enough to get to the depot that evening.

Mr. Garrett, having the impression from the parties in interest (there were no creditors), that the land would not be sold unless it brought $25 or $30 per acre, put up the mountain farm for the first offering, and it was cried at $10 per acre, when, as he states, being advised by the distributees that the lands were worth $30 per acre, and by L. M. Carr, one of them, that if forty acres of the mountain in wood should go with it that he would give $20 per acre for it; and this having been so arranged in the division, and that being the first offering, and

not intending to report a sale at less than $25 or $30, as the distributees had intimated that they would not be satisfied at a less price, and expecting to take the 1 P. M. train that evening, in order to expedite the matter, he asked Mr. John Mead, a bystander and one of the appellees here, to place a bid of $20 on the land, and it should not fall on his hands. There being no further bid, the home farm was offered for sale next, and without any knowledge on his part as to the bidder, and without any procurement on his part, $30 per acre was offered for that. The whole land was then offered, it being started by the commissioner at $25 per acre; that it was then announced that the wheat crop on each farm would be reserved, and while the said $25 bid was being cried for the whole farm the said commissioner absented himself temporarily; and while he was absent, and so without his direction or authority, the real estate as a whole was taken down, and the mountain farm re-offered at $20 as a starting-point, and knocked down just as he, returning, came up, to Mr. John Mead; that he at once notified the auctioneer that the mountain farm was not a sale, and directed him not to certify that fact for publication, and said the same thing to Mr. Nichols, who, in his absence, had undertaken to act as a special commissioner, and directed the mountain farm to be knocked down to Mr. Mead, although he knew at the time he did so that the Mead bid was not a genuine bid, but placed there at his instance to ascertain hastily whether there was a purchaser on the ground who would buy at or near the bid supposed to be satisfactory to the distributees. The home farm was cried off to Lewis M. Carr, who declines to comply with the terms of sale, and, as special commissioner, he had directed the advertisement of the sale to be continued to the April county court.

Mr. Nichols denies that Mr. Garrett gave him the information stated above, but he is, doubtless, mistaken, as Mr. Alexander sustains Mr. Garrett, and says that while the tract was being cried as a whole Mr. Garrett told Mr. Nichols, and Mr.

Nichols told him, that the bid for the mountain farm at $20 per acre by Mr. Mead was made at the instance of Mr. Garrett, the acting special commissioner, and was not a genuine bid. This is not essential, because it was not necessary for Mr. Garrett to inform Mr. Nichols, as he was not acting as a commissioner of sale under the decree. Mr. Nichols offered to take the bonds of Mr. Lewis M. Carr, and complete the transaction with him, but Mr. Carr declined to act otherwise than with Mr. Garrett, the commissioner, and Mr. Nichols thereupon, to fix the matter, as he says, directed the auctioneer to report the sales and give him a certificate thereof as auctioneer, which was done subsequently during the same day.

The above facts were reported to the circuit court of Loudoun at term time, and Mr. Mead came in and said that he had never intended to buy the land, and had made this bid at the request of Mr. Garrett, his friend and neighbor, and supposed he was doing right in the matter, as Mr. Garrett was the party making the sale; that Mr. Garrett had said to him that he was running this sale, and no harm should come to him; that it should not fall on his hands; that he did not make the bid, but that Mr. Garrett, after speaking to him, told the auctioneer that Mr. Mead here would give $20 per acre, and he had allowed the auctioneer to so cry it. It was then taken down, not knocked down to him; then offered jointly with the home farm, and again taken down, and again offered with new conditions—that the wheat crop would be reserved; that he thought this was a new offering, and he did not again bid, nor did anybody else bid for him nor in his name, and he left, supposing that he had no concern with it, and was not there present when the mountain farm was knocked down to him, and did not know it, and had had no further connection with it; that he did not want the land at any price, and acquiesced in the action of Mr. Garrett, the court's commissioner and his own life-long friend—believing that it was all right.

Notice was given to Mr. John Mead and Mr. Lewis M. Carr

that the court would be asked to confirm the sale to them, and by consent this notice was treated as a rule, and the court brought the case on upon the said notices as rules, and decreed that the said rules be dismissed, and the court, declining to confirm the sale to either of them, directed the lands to be re-offered upon the same terms as in former decree; whereupon J. W. Carr, J. C. Carr, Rogers and wife and C. C. Carr, the appellants, being the distributees, or some of them, interested in holding Mead as a bidder at $20, appealed to this court, and assign the action of the court in releasing John Mead from liability, because of the foregoing facts, as error for which the said decree should be reversed.

We think the decree appealed from is, under the circumstances of this case, right. There appears to have been no fraud or undue concealment in the matter from the counsel of the parties then and there present, they having been fully informed of the relation which Mead held to the transaction. There was no bid reported to the court by the only commissioner who was legally qualified to make any report of sale to the court, and when the court, the vendor, came to consider the matter, there was no bid for the land and no bidder to whom the sale could be made.

The court, in acting upon the matter, was called upon to act in the exercise of a sound legal discretion in view of all the circumstances. It is to be exercised in the interest of fairness, prudence, and with a just regard to the rights of all concerned. Opinion of Staples, J., in *Brock* v. *Rice*, 27 Gratt. 816; citing *Taylor* v. *Cooper*, 10 Leigh, 317; *Daniel* v. *Leitch*, 13 Gratt. 195–211–214; *Blossom* v. *Railroad Company*, 3 Wall. (U. S. R.) 205, 206, 207; Rorer on Judicial Sales, pp. 30, 55, 56.

Judge Staples, in that case, says, also, on page 815:

"Whether the court will confirm the sale must in great measure depend upon the circumstances of each particular case. It is difficult to lay down any rule applicable to all cases, nor is it possible to specify all the grounds which will justify

any court in withholding its approval. If there is reason to believe that fraud or mistake has been committed, to the detriment of the owner or the purchaser, or that the officer conducting the sale has been guilty of any wrong or breach of duty, to the injury of the parties interested, the court will withhold a confirmation. Either party may object to the report, and the purchaser himself, who becomes a party to the suit, may appear before the court, and have any mistake corrected. *Roudabush* v. *Miller*, 32 Gratt. 454; *Berlin* v. *Melhorn*, 75 Va. 639; *Hansucker* v. *Walker*, 76 Va. 755; *Langhyer* v. *Patterson*, 77 Va. 470; *Terry* v. *Coles*, 80 Va. 695.

In the last-named case it is said: " Confirmation is the judicial sanction of the court. Until then the bargain is incomplete. Until confirmed by the court the sale confers no rights; until then it is a sale only in a popular and not in a judicial or legal sense. The chancellor has a broad discretion in the approval or disapproval of such sales. The accepted bidder acquires, by the acceptance of his bid, no independent right, as is the case of a purchaser at a sale under execution, to have his purchase completed, but is merely a preferred proposer until confirmation by the court of the sale, *as agreed to by its ministerial agent.* In the exercise of this discretion a proper regard is had to the interest of the parties and the stability of judicial sales. By sanctioning a sale the courts make it their own. There is a difference between such sales and ordinary auction sales and sales by private agreement. In cases of sales before a master, the purchaser is not considered as entitled to the benefit of his contract until the master's report of the purchaser's bidding is absolutely confirmed. *Davis* v. *Stewart*, 4 Texas R. 226; *Henderson* v. *Herrod*, 10 Miss. R. 454; *Taylor* v. *Gilpin*, 3 Met. 456; Hays' Appeal, 51 Pa. State R. ; *O. L. Ins. & Trust Co.* v. *Gibbons*, 10 O. St. Rep. 563; *Todd* v. *Gallego Mills Manufacturing Co.*, 84 Va. 586, and authorities cited. .

Upon consideration of the foregoing well-settled principles,

and of the circumstances of this case, there is no sound legal principle by which the circuit court could have rendered any decree in the cause at variance with the decree appealed from. Whatever view might be held as to the propriety or impropriety of a special commissioner at a judicial sale procuring puffers at a sale he is directed to make as such by the court, or what effect puffers will have in invalidating a judicial sale, at the objection of a defrauded purchaser made before confirmation, is matter well understood in the chancery practices. Under the circumstances of this case there can be no doubt that the supposed purchaser was not in fact such, and was not reported to the court as such, and there is no legal ground upon which the decree appealed from can be reversed as to the assigned error of releasing Mead. And under the circumstances Lewis M. Carr was also properly released. It appears that he desired to purchase the mountain farm, but was deceived by the $20 bid, and as a second choice bought the home farm. It was right, therefore, to release him also, and order a new sale. And as this is the action of the court below in the decree appealed from, the said decree must be affirmed.

DECREE AFFIRMED.