# Staunton

## ROHRER, ADMINISTRATRIX AND OTHERS v. STRICKLAND.

### September 7, 1914.

1. JUDGMENTS—*Collateral Attack—Direct Attack by Bill—Statutory Recoupment—Relief in Equity—Code Sections* 3299 *and* 3300.—
Where a sale under a deed of trust to secure purchase money of the property sold has been made under such circumstances and at such a price as to be unconscionable, and judgment has been taken against the debtor for deficiency in the price of the property sold, and a suit in chancery has been brought to enforce the judgment against other property of the debtor, he may by answer and cross-bill in the last mentioned suit assail the validity of the sale under the trust deed. This is not a collateral attack on a domestic judgment, which is not permissible, but a direct attack founded upon equitable grounds for relief. Moreover, the right to make such defense is controlled by section 3300 of the Code, which provides that if a defendant fails to avail himself of the defenses given by section 3299, he shall not be precluded from such relief in equity as he would have been entitled to if section 3299 had not been enacted.

2. TRUSTS AND TRUSTEES—*Sale—Inadequacy of Price—Vacating Sale.*
Where the price obtained for property at a trustee's sale is so grossly inadequate as to shock the conscience of the chancellor, the sale will be set aside. This is especially so where, as in the case in judgment, the trustee is the son-in-law of the creditor who was the only *bona fide* bidder at the sale. In such circumstances, the burden is upon the creditor-purchaser to repel the presumption of unfairness which attaches to such a sale. .

3. TRUSTS AND TRUSTEES—*Agent of Both Parties—Duty of Trustee.*—
A trustee in a deed of trust is the agent of both parties and bound to act impartially between them. He should bring the property to sale under every possible advantage to his *cestui que trust*. He may adjourn the sale from time to time to meet the exigencies of the situation. If he finds no bidders present except the creditor, or only sham bidders, he should adjourn the sale.

4.   TRUSTS AND TRUSTEES—*Sale at Inadequate Price—Absence of. Owner—Relief in Equity.*—A court of equity will grant relief against a sale under a trust deed where property is sold at a grossly inadequate price, and the owner has failed to attend the sale through mistake or inadvertence of himself or his agent.

5.   TRUSTS AND TRUSTEES—*Inadequate Price—Creditor as Purchaser—Relief of Debtor—Re-Sale by Creditor.*—Where a creditor in a deed of trust has become the purchaser of the property at a sale made by the trustee at a grossly inadequate price and under circumstances which would render it proper to set the sale aside, the debtor will not be denied relief simply because the creditor has sold the property to a *bona fide* purchaser for value, but a court of equity will ascertain what was the fair market value of the property at the time of the sale and will credit the debt secured by that sum.

Appeal from a decree of the Law and Chancery Court of the city of Roanoke. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Jackson & Henson,* for the appellants.

*Harvey B. Apperson* and *Martin & Chitwood,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

On December 1, 1910, J. T. Strickland, the appellant, conveyed a house and lot on Seventh street, in the city of Roanoke, to S. E. Rohrer and Sadie Rohrer, his wife, for the consideration of $2.500. The purchasers paid $500 down and executed a note for the residue, $2,000, payable one year after date, secured by deed of trust on the property, to one W. P. Weaver, a son-in-law of the creditor, as trustee. The note was not paid at maturity, and four

days subsequently the trustee advertised the property for sale, and, after four weekly insertions in the *Roanoke Evening World,* a daily newspaper published in the city, sold the lot at public auction, Strickland, as charged in the cross-bill, being the only bidder (though he says in his answer there was one other bidder) became the purchaser at the price of $675, and the property was forthwith conveyed to him by the trustee. Mrs. Rohrer had moved to Norfolk, where she was living at the time, and had no notice or knowledge of the sale. Her daughter, Mrs. Cage, lived in Roanoke, and Mrs. Rohrer, knowing that her note was approaching maturity, charged her daughter to be on the alert for any advertisement of sale that might appear in a Roanoke paper, in order that she might be promptly advised and take the necessary steps to prevent a sacrifice of her property. Mrs. Cage understood that the notice was to be published daily for one month, and though she kept diligent watch on the papers failed to observe any of the four insertions in the *Evening World.* So that neither Mrs. Rohrer nor her daughter was informed of the time of the sale, either by advertisement or by Strickland, though he knew where the former could be found in Norfolk and the residence of the latter in Roanoke. The property was resold privately by Strickland for $2,000.

The trustee's sale was on January 5, 1912, and on February 5, following, Strickland recovered a judgment against Mrs. Rohrer, in her own right and as administratrix of her husband, in the Circuit Court of the city of Norfolk, for $1516.13, with interest and costs, being the difference between the note for the purchase money and the price that the property brought at the trustee's sale. Four days after the recovery of the judgment, Strickland filed the original bill in this case to subject certain other real estate belonging to Mrs. Rohrer and the estate of her husband to its payment.

Mrs. Rohrer, by answer and cross-bill, resisted the relief sought in the original bill, and insisted that she was entitled to have the sale set aside or else to have credit on the purchase money note for $2,000, the amount for which Strickland resold the property. Neither Strickland nor Weaver testified in the case, and at the hearing the trial court, after having determined the fair market value of the property, by the verdict of a jury on an issue out of chancery, to be $1,800, decreed that Mrs. Rohrer was entitled to a credit for that sum, instead of the amount for which the property sold, on the purchase money note. Subsequently, upon rehearing, that decree was set aside and the cross-bill dismissed; the court resting its decision on the ground that since the institution of the suit Strickland had sold the lot in controversy. The last decree also directed preliminary accounts to be taken looking to the subjection of other property to the satisfaction of the judgment.

The unconscionableness of this transaction fully appears from the foregoing summary of undisputed facts, and does not call for either elaboration or comment. *Res ipsa loquitur.* The arm of the chancellor would indeed be all too short if it could not reach out and prevent the injustice and oppression that would result from granting the prayer of the original bill.

Counsel for appellee are in error in supposing that this is a collateral attack upon a domestic judgment, which, of course, is not permissible. The attack is not collateral, but direct by cross-bill, founded upon equitable grounds for relief. Story's Eq. Pl. sec. 398; *Little Rock &c. Ry. Co.* v. *Wells,* 61 Ark. 354, 33 S. W. 208, 30 L. R. A. 560, 54 Am. St. Rep. 216.

The question is controlled by statute (Code, sec. 3300), which declares that if a defendant who is entitled to the defenses contemplated by section 3299, by special plea of

set off, fails to avail himself of such plea, he shall not be precluded from such relief in equity as he would have been entitled to if section 3299 had not been enacted.

Nor is authority wanting for the general proposition that where the price obtained for property at a trustee's sale is so grossly inadequate as to shock the conscience of the chancellor, the sale will be set aside. Especially is that true when the trustee is the son-in-law of the creditor, the only *bona fide* bidder at the sale. In such circumstances the burden rests upon the creditor-purchaser to repel the presumption of unfairness which attaches to such a sale. Yet in this instance, as remarked, neither the creditor nor the trustee testified, nor did they call any other witness to repel the presumption of misconduct on their part, raised by the conditions surrounding the transaction.

In *Rossett* v. *Fisher,* 11 Gratt. (52 Va.) 492, Moncure, J., in delivering the opinion of the court, at pp. 498-499, observes: "A trustee in a deed of trust is the agent of both parties, and bound to act impartially between them; nor ought he to permit the urgency of the creditors to force the sale under circumstances injurious to the debtor at an inadequate price. 1 Lom. Dig. 323; *Quarles* v. *Lacy,* 4 Munf. (18 Va.) 251. He is 'bound to bring the estate to the hammer,' as has been said by Lord Eldon, 'under every possible advantage to his *cestui que trust;'* and he should use all reasonable diligence to obtain the best price. Hill on Trustees, 479, marg., and cases cited." *Wilson* v. *Wall,* 99 Va. 353, 33 S. E. 181.

In Minor on Real Property, sec. 497, it is said, the trustee must exercise "in all things, in respect to the *cestui que trust,* the most transparent good faith." See authorities n. 1, also sec. 665.

It is likewise well settled that a trustee in the exercise of a reasonable discretion, may adjourn the sale from

time to time to meet the exigencies of the situation. Jones on Mortgages, sec. 1873, citing *Dexter* v. *Shepherd,* 117 Mass. 480; *Hosmer* v. *Sargent,* 8 Allen (Mass.) 97, 85 Am. Dec, 683.

"Moreover, if it appears that going on with the sale at the appointed time will result in a great sacrifice of the property, it is his (the trustee's) positive duty to adjourn the sale, and if he fails to do so he takes the risk of having it vacated." 27 Cyc. 1475. The text is supported by the authorities cited in n. 8, 9.

Such sale "will be vitiated by any fraud against the rights of the debtor or any collusion between interested parties of a nature to cause a sacrifice or depreciation of the property. . . It is the duty of the mortgagee or trustee to use every reasonable care and exertion to make the property bring the highest price obtainable." *Idem* 1477.

"If a trustee finds that there is no bidder present except the creditor, or only sham bidders, he should adjourn the sale." *Fairfax* v. *Hopkins,* 8 Fed. Cas. No. 4614, 2 Cranch C. C. 134; *Meyer* v. *Jefferson Ins. Co.,* 5 Ka. App. 245; *Vail* v. *Jacobs,* 62 Mo. 130, 133; *Johnston* v. *Eason,* 3 Ired. Eq. 330, 336; *Briggs* v. *Briggs,* 135 Mass. 396.

It has also frequently been held that a court of equity will grant relief where property is sold at a grossly inadequate price, and the owner has failed to attend the sale through mistake or inadvertence of himself or his agent. *Holdsworth* v. *Shannon,* 113 Mo. 508, 21 S. W. 85, 35 Am. St. Rep. 723; *Williamson* v. *Bale,* 3 Johns. Ch. 290; *Bixly* v. *Vead,* 18 Wend. 611; *Seaman* v. *Riggins,* 2 N. J. Eq. 214, 34 Am. Dec. 200; *Howell* v. *Hester,* 4 N. J. Eq. 266; *Wetzler* v. *Schaumann,* 24 N. J. Eq. 60.

The books abound with illustrations of the principle that courts of equity will seize upon the fact of accident

and surprise, coupled with gross inadequacy of price, as a justification for granting relief.

The circumstances that, pending litigation, the property has passed into the hands of a purchaser for value and without notice constitutes no bar to granting the alternative relief prayed for by the appellant, Mrs. Rohrer, in her amended cross-bill, namely, that "she is entitled at least to have the purchase price of $2,000 credited on the original $2,000 purchase money bond," and that Strickland will only be permitted to enforce his judgment for whatever balance may remain after applying such credit.

It appears, however, that the resale of the property made by Strickland for $2,000 was in monthly installments of $20 each, and that it is doubtful whether all of it can be collected. We are, therefore, of opinion that substantial justice will be done by crediting the original purchase money note by $1,800 (that being the fair market value of the lot as ascertained by the verdict of the jury and approved by the first decree of the court below) to be applied as of the date of the trustee's sale.

Upon these considerations the decree of the Law and Chancery Court of the city of Roanoke must be reversed, and the case remanded for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*