## CHARLESTON.

Lowman *et al.* v. Funkhouser *et al.*

Submitted October 3, 1916.    Decided October 10, 1916.

Judicial Sales—*Partition—Confirmation of Sale.*

Until confirmation, a judicial sale is an incomplete bargain. Whether the court will confirm the sale must depend, in a great measure, on the circumstances in each case. Either party may object. The purchaser becomes a party to the suit and may have any mistake corrected by the court.

*Held:* Under the circumstances of this case, the court should have refused to confirm the sale, and have dismissed the rule.

Appeal from Circuit Court, Morgan County.

Bill in equity by William Lowman and others against Mollie Funkhouser and others. From a decree confirming a sale in partition and directing a resale at the risk of the purchaser, plaintiffs appeal.

*Reversed and rule dismissed.*

*Decatur H. Rodgers* and *Allen B. Noll,* for appellants.

*Stuart W. Walker* and *Faulkner & Kilmer,* for appellees.

Mason, Judge:

This is an appeal from a decree of the circuit court of Morgan County approving and confirming a sale reported to the court by a special commissioner and directing a resale of the property at public auction at the cost, risk and expense of the person reported as the purchaser.

The history of the proceedings out of which this appeal arises, so far as necessary to be stated, is as follows:

James M. Lowman by his last will devised real estate to his children, William Lowman, George C. Lowman, Mollie Funkhouser, Maggie Keesecker, Alice Plotner, and Jennie Michael, and his daughter-in-law, Ella Lowman, and his granddaughter Fay Lowman, an infant of whom the said Ella Lowman is guardian. The children got one-seventh of the estate each, and the daughter-in-law and granddaughter together one-

seventh. He appointed the said William Lowman and George C. Lowman his executors.

A friendly suit was instituted to partition the land. An attorney was selected to represent all the parties: A decree was entered September 4, 1913, decreeing a sale of the real estate and appointing the attorney for the devisees, H. W. Bayer, special commissioner to make the sale, the property not being susceptible of partition in kind. On the 8th day of November, 1913, after advertisement, the special commissioner proceeded to offer the said property for sale, and thereafter continued the sale from time to time until the 29th day of November, 1913.

The commissioner reports that he sold the property to George C. Lowman on the 29th day of November, 1913, at the price of $10,000.00; and said Lowman did not comply with the terms of the sale. A rule was issued at the instance of the special commissioner against Lowman, returnable to the first day of September, 1914, to show cause if any he could why the said real estate should not be resold at his risk and expense. It does not appear from this record when the rule was issued, but we have it from briefs of counsel that it was entered April 16, 1914. The record does not show any further proceedings until April 13, 1915. The rule was never served on Lowman. The proof shows that the commissioner advertised and offered the property again for sale September 26, 1914. On the 13th of April, 1915, the cause was again heard; George C. Lowman appeared and waived service of the rule and filed his answer, but the record is conflicting as to when the answer was filed. The cause was continued until April 15, 1915. The following is the answer of said Lowman to the rule:

"1. This respondent, for answer to said rule, comes and says: that he waives service thereof, and without waiting until the first day of September term of this court, 1914, submits this his answer thereto.

"2. Your respondent, further says: That it is true the real estate mentioned in plaintiffs' bill of complaint was knocked down to him by G. W. Cross, auctioneer, for the sum and price of ten thousand dollars ($10,000.00); that said sale, however,

should not have been made to him because he was acting as agent for the devisees of James M. Lowman in bidding upon said property; that the said devisees, and their representatives, of said decedent, at a meeting in the office of H. W. Bayer, special commissioner, just before said property was offered for sale, at which meeting the said devisees, or their representatives, your respondent and the said H. W. Bayer, special commissioner, were present decided and agreed that he, your respondent, should bid for the heirs to a price not exceeding twelve thousand dollars ($12,000.00), and that said special commissioner should not knock off said property at a figure under that amount, except by agreement of all said devisees, or their representatives.

"3. Your respondent avers that in pursuance of said agreement—he bid upon said property; that the said H. W. Bayer, special commissioner, had full and complete knowledge of the conditions under which he was bidding, and the persons for whom he was bidding, and that said sale, if held to be one, was made to all of the devisees of the said James Lowman.

"4. Your respondent avers that he was not aware said property was to be knocked off to him; that he was not consulted about the price, nor were any of the other devisees, or their representatives, consulted by the special commissioner, and that said property was in fact not sold.

"5. Your respondent, further avers that in view of the understanding had by him with the said H. W. Bayer, special commissioner, and with the other devisees and their representatives as hereinbefore set forth, said sale is void, and the court should enter a decree for the resale of the property."

On the 16th day of April, 1915, the proceedings on the rule were continued until the September term of the court. Proof was taken at different times during the summer.

The suit for partition was brought in the names of William Lowman and George C. Lowman, two of the devisees, plaintiffs, and the other devisees were made defendants. All of the defendants except one, Fay Lowman, are adults. None of the defendants except Mollie Funkhouser and Ella Lowman, widow of John Lowman, deceased, has asked that George C. Lowman be required to take the land and comply with the

sale. Two of the devisees, namely William Lowman and Maggie Keesecker, appeared and objected to the confirmation of the sale, and asked that the land be resold, and joined with George C. Lowman in this appeal.

The controlling question in this case is whether George C. Lowman bid for the land with an understanding or agreement that he was representing all the parties. Did he bid for the land under the belief that he was representing all of the devisees? If so, he should not be held as a purchaser. It is true beyond dispute that Mr. Bayer was counsel for all the parties; that the suit for partition was a friendly one; that before the property was offered for sale George C. Lowman and some of the parties had a consultation with Mr. Bayer, the commissioner, concerning the price at which the property was to be sold. Mr. Bayer, in his deposition, when asked this question; "You were acting for all the heirs, were you not?", replied: "That is what I understood at the time, yes." He further says:

"Q. What, if any conversation, did you have with William Lowman and George C. Lowman, about selling this property, in your office, the day you offered it?

"A. A number of the parties in interest met in my office and discussed among themselves and with me the price at which it might be knocked down. One of the parties Mr. Jake Michael mentioned $12,000.00 as the price which they wanted, or rather which it should be sold for. I am not sure whether they all agreed that to be the lowest price for which it was to be sold or not.

"Q. How many attended this meeting in your office, besides you?

"A. I believe there were about half a dozen.

"Q. Do you know who they were?

"A. George Lowman, William Lowman, John Keesecker, Jacob Michael, those are all the names I can recall.

"Q. Did you have any conversation with Mr. Funkhouser, about this sale?

"A. We had a number of conversations about it, since it was over and before.

"Q. Did you have an arrangement with the heirs or any of

them, not to knock the property off until the final bid had been submitted to them for their approval?

"A. That is rather a hard question. · While that is my usual custom and I presume that I had some such arrangements, yet I cannot recall any special arrangement with these parties.

"Q. These parties in your office, were all interested as joint owners of this farm or husbands of joint owners, were they not?

"A. They were."

William Lowman in his deposition says:

"Q. For whom was your brother bidding when he put that bid of $10,000.00 on that property?

"A. Why he was holding it up for the heirs, as far as I know.

"Q. Did you have any understanding with him about that?

"A. Yes, we talked it over about that, and thought it ought to bring that much.

"Q. Do you know what instructions Mr. Bayer gave Mr. Cross about the sale of this property?

"A. We gave him instructions not to knock off until the price suited."

He does not know whether Mr. Bayer told this to Cross.

It is quite clear that there was some arrangement or understanding between George C. Lowman and the commissioner at the time this bid of $10,000.00 was made. That George C. Lowman was not bidding with the expectation of becoming a purchaser is borne out by the further fact that the evidence shows that he was not financially able to make a purchase of $10,000.00, and make a payment of one-third in cash. · It is shown that he owned a farm containing 138 acres, worth about $1,500.00, and it does not appear that he had any other property. It is shown that he was worth about $1,500.00, not including his one-seventh interest in the land in controversy. In addition to this, no effort was made by the commissioner at the time, or for some time afterwards, to compel him to comply with the terms of the sale, but the property was offered for sale at least twice afterwards. And then, the property was not taken possession of by him.

George C. Lowman and his brother William were executors

of their father's will. They took charge of the real estate for the devisees, rented it and paid the taxes. There was no change in the possession or management of the lands after this sale. Under the circumstances of this sale there can be no doubt that George C. Lowman did not intend the bids made by him to be for himself. It is clear that he acted under the honest belief that he was bidding for all the parties. The commissioner, who was counsel for all the parties, and who acted for all, in referring to the arrangement between himself and the parties, says: "I presume that I had some such arrangement, yet I cannot recall any special arrangement with these parties." Besides, he did not require George C. Lowman to complete the sale by complying with its terms. The supposed purchase is not such in fact, and the decree of the court confirming the sale and thereby passing title is erroneous.

It is well settled that "until confirmation, a judicial sale is an incomplete bargain. Whether a court will confirm a sale must depend, in a great measure, on the circumstances of each case. Either party may object." *Carr* v. *Carr*, 88 Va. 735. A bid, although accepted by the commissioner making the sale, does not become a complete contract until reported to and confirmed by the court; until then, the bid is merely an offer to buy, but the bidder agrees to be bound by it, if it is accepted, and approved by the court.

Where a purchaser at a judicial sale fails to comply with the terms of the sale, the commissioner may (a) ignore the bid and resell the property, but in such case there would be no liability on the purchaser should the property sell for a less price at a second sale; or (b) the court may confirm the sale, in a proper case, and compel the purchaser to comply with the terms; or (c) the court may order a resale and provide that the purchaser shall be held responsible, in case upon a resale the property shall bring less than his bid; but before a resale, in order to hold the purchaser liable, there must be a rule upon him to comply with the terms of the sale, or show cause why it shall not be resold, holding him responsible for any difference between his bid and what it may bring at a resale; or (d) the court may refuse to confirm the sale. *Stout* v.

*Philippi Manufacturing & Mercantile Company*, 41 W. Va. 339, 347-8.

We are clearly of opinion that the court erred in confirming the sale in this case, for the reasons hereinbefore stated. We reverse the decree and dismiss the rule.

Who should pay the costs of this proceeding? As we have already seen, the original suit out of which this controversy arose, was for partition of certain real estate among eight devisees. The property not being susceptible of partition in kind, a sale was decreed. The special commissioner reported that one of the devisees purchased the property at a sale made by him as such special commissioner. The purchaser excepted to the report, and denied that he had made the purchase; two of the devisees joined with the alleged purchaser, asking that the same be not confirmed; four of the other devisees remained neutral; one of the devisees, Mrs. Mollie Funkhouser, insisted on the confirmation of the sale. After she had talked with the special commissioner a number of times saying she wanted her money, the commissioner made his report, and asked for a rule to compel the purchaser to comply with the terms of the sale. When the rule was issued Mrs. Funkhouser employed counsel to represent her. Depositions were taken at her instance, and in her behalf, at the taking of which she was represented by counsel. She was represented by counsel in this court. In short, it is reasonably clear that the rule was issued at her instance, and it is certain that she alone of the devisees prosecuted the proceeding on the rule in the court below and in this court; and the decree of the circuit court being now reversed, she should pay the costs in this court, and the costs in the proceeding in the circuit court upon the rule. The four devisees who did not participate in the controversy and are made parties by reason of their interest in the proceeding, should not be required to pay any part of the costs.

*Reversed and rule dismissed.*