# CHARLESTON.

EASTWOOD *v.* KANAWHA SAVINGS & LOAN CO. *et al.*

(No. 6527)

Submitted January 21, 1930.    Decided April 1, 1930.

*Robertson & Robertson* and *Henry S. Cato,* for appellant.
*Payne, Minor & Bouchelle,* for appellees.

LITZ, JUDGE:

The object of this suit is to set aside a sale of real estate under four several trust deeds and to cancel conveyances of the property pursuant to the sale.

The plaintiff, Ida May Eastwood, is a spinster about seventy years of age, living on a tract of thirty-four acres of land in the vicinity of Charleston, Kanawha county, W. Va. She executed the trust deeds January 8th, January 29, March 6, and April 16, 1926, respectively, conveying the land to secure the defendant Kanawha Savings & Loan Company of Charleston, the payment in weekly installments, of loans aggregating $3,800. For default in the payment of the installments amounting to about $600, the property was advertised to be sold under the trust deeds, February 8, 1927. At her instance, the sale was continued to March 15th, following. On March 14th

A. M. Belcher, an attorney of Charleston, approached David Dick, secretary of the loan company in active charge of its affairs, seeking a further continuance of the sale for two weeks to afford the plaintiff additional time to discharge the arrearage. Belcher, who acted as emissary for E. E. Robertson, agent and counsel for plaintiff, testified that Dick, refusing to grant a continuance without the consent of other officers of the company, promised to consult them, and, if it was then decided to proceed with the sale, to notify him; that he left $40 with Dick as a consideration for the continuance, and advised him "if it (the continuance) wasn't alright we wanted to know so that other arrangements could be made." Dick denied that he accepted the money as a consideration for the continuance of the sale or that he told Belcher in so many words that he would notify him in case the sale was not continued. He did not, however, deny Belcher's statement, "I notified Mr. Dick at the time if it (the continuance) wasn't alright, we wanted to know so that other arrangements could be made." He also admits telling Belcher he would accept the money and hold it "in escrow" and if the continuance was agreed to, he would credit the amount on the indebtedness, and, if the continuance was not granted, he would return it. On the same day, after seeing Belcher, Dick consulted other officials of the company about the matter; they told him to use his own discretion. He then decided, according to his testimony, to go on with the sale, without notifying Belcher or returning the money to him until after the sale.

The plaintiff, not having been advised of the arrangement between Belcher and Dick, saw the latter in Charleston about 11 o'clock on the 15th, at which time he told her that the sale would be continued if she paid the delinquent installments by noon. She then consulted Robertson, who advised her of the arrangement between Belcher and Dick, and "that the sale would be continued, and to go on home and not worry any further about it." Whereupon she left the city and heard nothing further of the matter until after the sale, which occurred at 2 o'clock that afternoon. C. R. Connor, trustee, became the purchaser of the property at the price of $5,200 for

the benefit of himself, J. A. Bouchelle, Berkeley Minor, Jr., John Ray, and Andrew A. Payne. Title was conveyed to the purchaser by deed dated March 15, 1927, and by deed dated March 17, 1927, he conveyed the property to the old Pike Land Company, a corporation, organized by those interested in the purchase to hold the title. This cause was instituted the following day.

It is charged, as the basis of the suit, that the sale was made in violation of the agreement between Belcher and Dick for a grossly inadequate consideration.

The defendants contend that the dispute between Belcher and Dick as to whether the latter promised to notify the former if the sale was not continued has been settled by the finding of the trial court. It makes little difference under the admitted facts and circumstances whether or not there was an express promise by Dick to notify Belcher. It was his duty, even in the absence of an express promise, to have done so. He admits receiving the $40 to be held subject to the decision of other officials of the company on the question of continuance, and does not deny that Belcher requested that he be advised, if the sale was not continued, "so other arrangements could be made."

Nine witnesses for the plaintiff and seven for the defendant testified to the value of the property.

### EVIDENCE FOR THE PLAINTIFF ON THE VALUE OF THE PROPERTY.

E. E. Robertson, who for twenty years had dealt in real estate in and around Charleston, and was at the time of the sale negotiating a loan for the plaintiff to pay her indebtedness to Kanawha Savings & Loan Company, stated that in his opinion the land was worth a $1,000 an acre. F. M. Eastwood, a brother of the plaintiff living near the property, also fixed the value at $1,000 an acre. John J. Thayer, real estate dealer for twenty years in and around Charleston, testified that the fair value of the property was $900 an acre, and that he had attempted to secure an option on it from the plaintiff in the spring of 1927 at $1,200 an acre. J. E. Browder, real estate dealer for eighteen years in and around Charleston, considered $750 per acre as its fair market value. Henry Cohen, who, for

about eighteen years, had been engaged in the sale and purchase of real estate and its appraisal for loans in and around Charleston, testified that the market value of the land was $800 an acre and the value of the improvements $1,200. Roger A. Young, of the well-known real estate firm of Noyes & Young, which had been doing business in and around Charleston for sixteen years, fixes the value of the property at $850 an acre. E. A. Ripley, dealer in real estate for ten years in and around Charleston, fixes the value at $800 an acre. Richard Higgins, real estate dealer for fifteen years in and around Charleston, testified that the fair market value of the property was $750 an acre. L. F. Shannon, a member of the Charleston Real Estate Board, and engaged in the real estate business for fifteen years in and around Charleston, fixed the fair market value at $800 an acre. The loan company, before making the loans, accepted as the appraised value the valuation of $30,000 fixed by the plaintiff.

### EVIDENCE FOR THE DEFENDANTS ON VALUATION

Fleet Riddle, who owns some houses and lots near the property, estimates its value at $10,000. S. B. Thomas, dealer in real estate for ten years in and around Charleston, testified that the property was worth from $125 to $175 an acre. F. W. Withrow, who conducts a small loan business in the city of Charleston, fixes the fair market value at from $8,500 to $9,000. Herbert L. Carney, an attorney at law who owns real estate in and around Charleston, testified that he and an associate had contemplated bidding on the property but decided they would not offer more than $6,500. He testified that he did not want to be understood as giving it as his opinion that the fair market value of the property was only $6,500. D. J. Smith, dealer in real estate in and around St. Albans, and who is the appraiser for the Federal Farm Board for government loans, fixes the value at $6,650. John Walters, employed by the Appalachian Electric Power Company as a right of way agent, fixes the value at $200 an acre. Elijah Steen, who has been dealing in real estate in and around Charleston for about ten years, also fixes the value at $200 an acre. W. D. Payne, whose son and law partners received five-sixths of the property under

the purchase by C. R. Connor, trustee, testified that he made up his mind after investigating the property for Connor and his associates a short while before the sale that it was worth not to exceed $7,000, and advised Connor, Bouchelle, Minor, Ray, and his son, if they could buy it for no more than that, he would arrange for them to pay for it.

It is clear from the evidence of valuation, as a whole, that the property sold for much less than its fair market value, and further that, except for the arrangement between Dick and Belcher, resulting in the absence of the plaintiff from the sale, it would probably have brought a substantially greater price. Mr. W. D. Payne, who, according to the trustee conducting the sale, did the bidding for the purchaser, questioned the trustee at the time as to whether due notice of the sale had been published and posted, and if Miss Eastwood had been notified. Had similar inquiry been addressed to Dick, who was present directing the sale, information accounting for her absence, due to mistake or misapprehension, doubtless would have been forthcoming. .

The failure of Dick promptly to notify Belcher of his final decision to proceed with the sale after consulting with other officials of his company, under the admitted facts and circumstances, justified the belief on the part of Belcher, which he conveyed to Robertson, that the sale had been continued. "It has also frequently been held that a court of equity will grant relief where property is sold at a grossly inadequate price, and the owner has failed to attend the sale through mistake or inadvertence of himself or his agent. *Holdsworth* v. *Shannon*, 113 Mo. 508, 21 S. W. 85, 35 Am. St. Rep. 723; *Williamson* v. *Dale*, 3 Johns Ch. [N. Y.] 290; *Bixley* v. *Mead*, 18 Wend. [N. Y.] 611; *Seaman* v. *Riggins*, 2 N. J. Eq. 214, 34 Am. Dec. 200; *Howell* v. *Hester*, 4 N. J. Eq. 266; *Wetzler* v. *Schaumann*, 24 N. J. Eq. 60: The books abound with illustrations of the principle that courts of equity will seize upon the fact of accident and surprise, coupled with gross inadequacy of price, as a justification for granting relief.'' *Rohrer* v. *Strickland*, 116 Va. 755, 82 S. E. 711, 712.

In view of all the facts and circumstances, we are of opinion to reverse the decree of the court of common pleas (dismissing

the bill) and the decree of the circuit court affirming the same, and to grant the relief as prayed. "Where the price bid is clearly inadequate, but not grossly so—where there are other circumstances rendering it inequitable to let the sale stand— the courts have set the sale aside." *Daggett Hardware Co.* v. *Brownlee,* 186 Mo. 621, 85 S. W. 545, 547.

It is not meant by this ruling that the purchaser or any of his associates intended in any way to take advantage of the absence of the plaintiff. The evidence does not warrant such a conclusion against men of so high professional and moral standing as they. *Reversed.*