# Richmond

ASHBY WILLIAMS, ET ALS. V. ASHTON C. JONES, JR., TRUSTEE, ET ALS.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Ashby Williams, Leon M. Bazile* and *Alfred J. Kirsh,* for the appellants.

*Barbour, Garnett & Pickett, Wilson M. Farr, Lawrence W. Douglas* and *Harry R. Thomas,* for the appellees.

BROWNING, J., delivered the opinion of the court.

This is an appeal, in effect, from decrees directing and confirming a sale of a tract of land in Arlington county, Virginia, containing 130 acres, by trustees who had theretofore been directed by decree to make such sale. The sale was made under the terms of a deed of trust, securing a debt of fifty thousand dollars, which debt was due and payable at the time of the entry of the decree for sale. Default was made in the payment of accrued interest on the principal of the indebtedness to the extent of $1,750; the taxes on the land, which is the subject of the trust deed, were in arrears for three years in the amount of $3,287.78, and default was made in the payment of the principal indebtedness. The creditors under the deed of trust, after making fruitless demand upon the debtor, Ashby Williams, for payment of arrearages of interest and principal, directed the trustees to foreclose the trust deed by sale of the land in accordance with its terms. In this the creditors were well within their legal rights and the trustees had no volition in the matter except to employ their best efforts to the end that the sale should be conducted under such auspices as would result in obtaining the best price possible, in the interest of all parties in concern.

The trustees, in obedience to the direction of the creditors, prepared an advertisement for the sale of the land to be held on the twenty-fifth of September, 1932. At the instance of Mr. Williams, the debtor, craving indulgence, this contemplated sale was abandoned upon the execution

by the debtor of a written agreement promising to pay the sums of interest, due and in default, within a period of three months and also agreeing not to raise further objections to a sale of the land in the event of his failure to make the payments provided for. The extension of time was granted but he failed to make payment of the sums agreed upon.

It is unnecessary to pass upon the question of the effect of this agreement upon the right of the debtor to subsequently interpose objection to a sale. The provisions of the agreement are noted to show that the attitude of the trustees was not inimical or hostile to the debtor but indulgent and co-operative. The deed of trust, first in dignity of lien, and about which we have been speaking, was of date January 24, 1930.

A second deed of trust was executed by Williams and wife conveying the same land in trust to secure notes aggregating $13,800, which constituted a fund to be invested and administered for the benefit of Mrs. Williams and the two infant children of the grantors. It is of no important moment to make further mention of this second incumbrance.

The matter appears to have remained in abeyance until the land was advertised for sale by the trustees for March 21, 1933, when Mr. Williams, the debtor, and the Heston Land and Improvement Corporation, which had taken title to the land, by deed, filed their bill in equity praying that the trustees be enjoined from making sale of the land as a whole and for cash, and asking the court to appoint commissioners to take charge of the land and make sale of the same by subdivision into lots with the dedication of streets, alleys and such conveniences, incident to the effectuation of a proper subdivision. No order of injunction was insisted upon or issued but the court referred the matter to a master commissioner, for the purpose of receiving from the complainants, or any defendant, suggested plans of subdivision of the land into lots and streets and proposed terms of sale, and to take such testimony as

he might deem necessary or which might be produced before him, and the commissioner was directed to report his findings to the court. The expense of this proceeding was directed to be paid by the complainants or by any one or more of the parties secured under the second lien deed of trust.

The commissioner, after taking testimony and receiving suggestions, reported that there could be no sale of the land which would protect the interest of the creditors under the first deed of trust; that there could be no sale of the property as a whole or in lots on the market then existing and that there could be no sale which would protect the interests of the owners of the property. No exceptions were taken to this report and it was confirmed. The court construed the report to mean that no sale of the land could be made for a sufficient sum to satisfy the taxes binding thereon and the amount of the first deed of trust debt. The commissioner also reported that there had been submitted to him only the single plan of subdivision, shown on two plats, returned with his report. The plan was a tentative paper suggestion without any physical identification with the land itself. It was nothing more than an indefinite proposal, not projected on the land itself.

The decree directed the trustees to proceed with the sale, with the authorization to offer the land as a whole on terms of one-third cash and the residue in two equal installments payable in one and two years, after due advertisement, and they were also authorized to make sale of the land in two separate parcels, for cash, the parcels being designated by their location with respect to a way known as Memorial Drive which runs at or through the property.

The trustees reported their execution of the decree, stating that they first offered the property as a whole and the highest bid was fifty thousand dollars subject to the accrued taxes, before referred to, and thereafter the land was offered in parcels, as designated, with no bid as the

result. The whole tract was then cried off to B. W. Jerman, trustee for the first lien creditors. The trustees recommended confirmation of the sale as reported.

The debtors excepted to the sale for divers reasons, none of which we think it necessary to discuss, except the contention that it was the duty of the trustees to have caused to be made a physical subdivision of the land into lots, streets, alleys etc., and then to have undertaken a lot sale or a sale of the subject in that manner.

It is urged by the debtor and owner of the land that the county of Arlington is largely suburban; that it is in juxtaposition to the nation's capital; that from Washington there is a constant exodus of people seeking homes nearby and that for these reasons among others the land should have been subdivided as referred to and sold in that way. The outcome of such sales are by no means even approximately certain. Their completion is often extended over an indefinite period of time. The action of the trustees is limited to the contract as expressed by the deed. This principle was succinctly expressed by the annotated Code of Virginia (Michie) 1924, sec. 5167.

"The trustee can only do with the trust property what the deed, either in express terms or by necessary implication, authorizes him to do." This was based upon *Patch* v. *Morrisett,* 2 Va. Dec. 127, 22 S. E. 173; *Wilson* v. *Wall,* 99 Va. 353, 38 S. E. 181, and other cases there cited. Certainly it could not be said that a subdivision lot sale is a necessary implication from the terms of the trust deed. It is expressly recited that the deed is to be construed in accordance with the provisions of section 5167 of the Code, as amended by Acts 1926, ch. 324.

If persons, assuming solemn business relations, expressed by a recorded written agreement, couched in definite and specific terms, were unable to effect a reasonable enforcement of their rights thereunder, the obligations of contracts would be seriously impaired. It is the experience in human affairs that the unfortunate and struggling debtor, with whose plight reasonable persons always

sympathize, grasps at every straw to stay the evil, but generally inevitable, day.

The courts cannot, however insistent may be the appeal of the particular case, be hesitant in their adherence to the law which obtains and must govern their determinations.

The debtor and owner of the land, in the case in judgment, has cited a number of cases which he urges are authority for this contention.

One of these is *Terry* v. *Fitzgerald*, 73 Va. (32 Gratt.) 843. In that case the land involved consisted of a tract of 1,117 acres, which contained four separate settlements, and two others which were about to be made, and the contention was that it could and should be divided into six sizable and valuable farms rather than be sold under the deed of trust as one tract or farm. The debt secured was $4,160. The lower court had awarded an injunction restraining the trustee from making a sale of the land or enough thereof to pay the debt, interest and cost in accordance with the terms of the deed of trust. This was upon a bill in equity filed by the owner of the land asking the court to direct the sale by its commissioner in parcels. The injunction was subsequently dissolved and the cause dismissed and an appeal was allowed from the dissolving and dismissal decree and this court held that the trial court should have retained the case and directed the execution of the trust, under its machinery for ascertaining the most advantageous method of making sale of the land. If then, the court was satisfied, through its investigation, by its approving commissioner, that a division of the subject in parcels would be conducive to an advantageous sale, it would be clothed with authority to adopt and direct such method. This is precisely what the trial court did in the case in judgment. It confirmed the report of the commissioner and directed the trustees to proceed with the execution of the trust, which was, in our opinion, its bounden duty.

■ ■ The courts in this State have a broad discretion in the approval or disapproval of judicial sales. It is, of course, a sound legal discretion in view of all the circumstances. We cannot say, in this case, that the court abused such discretion.

See *Terry* v. *Cole's Ex'r*, 80 Va. 695; *Carr* v. *Carr*, 88 Va. 735, 14 S. E. 368.

There are other important features in the *Terry* v. *Fitzgerald Case, supra,* which distinguish it from the case at bar.

Another case to which we are cited, as in all respects very like the present case, is *Morriss* v. *Virginia State Insurance Co.,* 90 Va. 370, 18 S. E. 843, 845. Upon this case the debtor and owner of the land strongly leans as support for his contention here. There the insistence was that a farm, lying near the city of Richmond, containing 856 acres, which was sought to be sold under a deed of trust, was capable of division into several valuable truck farms and that method should be adopted in making sale. The opinion of a judge of this court with respect to the incident expense of the division, which it approved, said:

"If these expenses are incurred at the instance and request of the debtor, as they did not diminish the amount to be received by the creditor and in no way impair his rights," then the incurrence of such expense was without objection.

But as to the application and potency of this case as an authority this court said in the later case of *Wilson* v. *Wall,* 99 Va. 353, 38 S. E. 181, 182:

"That was the view of the judge who delivered the opinion in that case. But only three judges sat in it. One of them concurred in the result, while the third delivered a vigorous dissenting opinion. The case, therefore, is not authority in any other case. *Whiting* v. *Town of West Point,* 88 Va. 905, 14 S. E. 698 [15 L. R. A. 860, 29 Am. St. Rep. 750]."

It is urged that the price at which the land was sold in the immediate case was grossly inadequate. This may

well be questioned when it is considered that it brought in excess of $500 per acre.

This court and others of like dignity have repeatedly held that allegations to the effect that the time is unpropitious for a sale; that the land could likely be sold for a better price later; that the large cash payment required would be attended with great, if not irreparable loss and injury to the debtor, present no grounds for the interposition of equity jurisdiction by injunction or otherwise.

It was held in the case of *Bolich, et al.* v. *Prudential Ins. Company of America, et al.,* 202 N. C. 789, 164 S. E. 335, 82 A. L. R. 974, that a financial depression, or unprecedented scarcity of money for ordinary transactions, or enforced stagnation of the real estate market is not sufficient to warrant a court of equity in restraining the exercise of the power of sale in a deed of trust.

See *Floore* v. *Morgan* (1915 Tex. Civ. App.), 175 S. W. 737; *Anderson* v. *White,* 2 App. D. C. 408; *Lipscomb* v. *New York Life Ins. Co.,* 138 Mo. 17, 39 S. W. 465.

We affirm the decrees of the trial court.

*Affirmed.*