## CIRCUIT COURT OF FAIRFAX COUNTY

David Quante

    v.

Whinerey et al.

February 13, 1990

Case No. (Chancery) 112459

By JUDGE THOMAS S. KENNY

In this case, defendant Whinerey had invested a substantial amount of money in the construction of a residence occupied by her, along with her daughter and son-in-law, Anne and David Quante. Ms. Whinerey's name was to have been added to the title, and a deed to that effect had been executed by Anne and David but had been retained by David and not delivered to Ms. Whinerey. (It was, subsequent to the foreclosure at issue here, recovered and recorded.)

Anne and David encountered marital difficulties and separated. David wanted the property to be sold and Anne did not. In an effort to force the sale, David refused to pay anything toward the mortgage, even though he knew that Anne did not have the financial resources to carry the mortgage by herself. The mortgage fell seriously in arrears.

Ms. Whinerey, apprehensive about losing her investment in the property, arranged to buy in the deed of trust note (on which only Anne and David were liable) for its then outstanding balance of approximately $275,000. As

noteholder, she substituted her own attorney as trustee and commenced foreclosure proceedings. On July 17, 1989, the only bidder at the foreclosure sale was Ms. Whinerey, who bought the property in at $224,000, about one-half of its assessed value for real estate tax purposes. David, who learned of the pending sale on the Friday before the Monday sale date, did not attend the sale.

The foreclosure sale price is about $51,000 less than the amount due on the note (and this "spread" does not take into account trustee's commissions and other costs of sale). The only evidence of fair market value of the property (evidence which the court finds somewhat less than compelling) put the value at between $650,000 and $700,000.

David has filed suit to set aside the foreclosure sale and to enjoin the delivery of a deed of sale from the trustee to Ms. Whinerey.[1] The issues narrow down to whether the bid price at the foreclosure sale was so inadequate as to compel the court to invalidate the sale. For the reasons set out below, I believe it was.

Before dealing with the adequacy of the purchase price, however, I must first discuss whether a court of equity should even consider giving David relief in these circumstances. Respondents have raised the defense of David's "unclean hands," that is:

> The complainant seeking equitable relief must not himself have been guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on.

deFuniak, *Handbook of Modern Equity*, § 24 (2d ed. 1956), quoted in *Richards v. Musselman*, 221 Va. 181, 185 (1980).

---

[1] He also requested a judgment against Anne for one-half of a check she is holding, payable to them jointly in the amount of $100,766.59. However, insufficient evidence was adduced for the court to determine the respective interests of the parties in the check (which represented proceeds of sale of certain marital property), and I will therefore decline to rule to that issue. Those sale proceeds will no doubt be dealt with at an equitable distribution hearing if not resolved sooner. Similarly, insufficient evidence was submitted for me to determine the arrearage on the note held by Ms. Whinerey.

The behavior which might bring the clean hands principle into play here is David's failure to record or deliver to Ms. Whinerey the deed conveying an ownership interest in the property.[2] Although I find his conduct reprehensible and certainly do not condone it, it appears to be insufficiently connected to the foreclosure to justify the application of the clean hands principle. What prompted Ms. Whinerey to buy in the note was not her being left off the title; foreclosure by the mortgage company would have destroyed her investment whether she had her name on the title or not. I therefore think that David's conduct with respect to the deed was not sufficiently connected with this litigation to constitute unclean hands. *See generally Richards v. Musselman, supra.*

With respect to the decisive issue in this case, the adequacy of the price at which Ms. Whinerey bought the property in at the foreclosure sale, the general rule in Virginia is that mere inadequacy of price is not sufficient to set aside a foreclosure sale unless the inadequacy is so gross as to shock the conscience of the chancellor and raise a presumption of fraud. *Hopkins v. Givens*, 119 Va. 278 (1916); *Rohrer v. Strickland*, 116 Va. 755 (1914).

Here, a property with a fair market value of about $650,000 was sold at an auction where the only bidder was the secured creditor; where the creditor's attorney was the selling trustee; where the only bid was at a price lower than the remaining balance on the note; where the sale was advertised in the least conspicuous manner possible within the technical requirements of the statute; and where one owner of the property only learned of the sale on the preceding business day. Under these circumstances, a presumption of unfairness arises, and the burden is on the defendant to repel such presumption. *Rohrer v. Strickland, supra.* It is not necessary to prove actual

---

[2] Testimony at the trial indicated that Anne and David executed a deed on May 6, 1986, giving Ms. Whinerey and Anne Quante, as joint tenants with rights of survivorship, a 75% interest in the property, and David Quante a 25% interest. David was given the deed at the attorney's office; it was not recorded then nor delivered to Ms. Whinerey. In August, 1989, it was found by Anne in an abandoned car on the property and subsequently recorded.

fraud on Ms. Whinerey's part. *Linney v. Normoyle*, 145 Va. 589 (1926).

I do not believe that Ms. Whinerey has rebutted the presumption of unfairness here. Accordingly, I am vacating and setting aside the foreclosure sale, and the trustee is enjoined from completing it.

The deed recorded in August, 1989, is presumptively valid, and the current title to the property is as stated therein subject, however, to the lien of the deed of trust given to secure the August 29, 1986, note purchased by Ms. Whinerey. Ms. Whinerey is still the holder of that deed of trust note. She has, of course, the right to try again to foreclose on the note if it remains in default. Any such foreclosure, however, must be done in a way to insure fair treatment to all concerned. The trustee must remember that he is the agent for both creditor and debtor and has a duty to conduct the sale in a just and impartial manner. *Morriss v. Virginia State Insurance Co.*, 90 Va. 370 (1893).

I do not believe that plaintiff has made out a sufficient case for damages, nor is he entitled to an award of attorney's fees. I have already stated earlier in this letter that I would not rule on the parties' respective interests in the $100,000 check, nor would I rule on the amount of arrearages on the deed of trust note.

My ruling on this matter is not, of course, intended to preclude the chancellor in a divorce action between Anne and David from making any appropriate equitable distribution of marital property in this case.