# CIRCUIT COURT OF THE CITY OF RICHMOND

W. Harold Talley I, L.L.C.

v.

North Richmond
Investments, Inc.,
John Gray,
and Suzanne Gray

v.

Charles E. Ayers, Jr.,
Substitute Trustee,
and Reiner H. Smith,
Substitute Trustee

October 20, 2011

Case No. CL10-462

By Judge Melvin R. Hughes, Jr.

This case was tried to the court on September 22, 2011. Upon completion of the evidence, the court took the matter under advisement.

The case concerns a commercial loan made by the plaintiff to the defendant corporation with the defendants John and Suzanne Gray as guarantors. The loan was secured by a deed of trust on real property. The plaintiff seeks a deficiency judgment after a foreclosure and the defendants have answered denying liability and have filed a counterclaim and a third-party claim against the foreclosure trustees.

In essence, the plaintiff alleges and the evidence supports that the plaintiff made the loan to the defendant corporation on December 30, 2003, in the amount of $460,000.00. The defendants used the loan proceeds to purchase commercial property located in Richmond. The defendants renewed the promissory note for the loan each year through 2009 until, in March 2009, they defaulted. The defendants cured this default in April 2009, but missed payments in September 2009. Following, in October 2009, the plaintiff foreclosed and, at a sale, the property sold for $239,433.22. The plaintiff

later sold the property for $515,000 within two months to a limited liability company. The defendants contend that the trustees accepted the first and only bid despite the property's assessment in 2009 at $507,500 and in 2008 $680,000 and that the trustees committed other violations in connection with the sale. After the foreclosure sale, the plaintiff brought this suit for the remaining balance, $257,367.97, plus interest under the terms of the note and guaranty agreement, and for attorney's fees.

In their defense to the plaintiff's claim and in their counterclaim, the defendants contend they are not in default because they made two additional payments that, if applied, would make their payments on the loan current. Thus, the defendants allege that the plaintiff impermissibly accelerated the note and foreclosed on the property in violation of the Deed of Trust and Guaranty agreement.

In their third-party claim and counterclaim, the defendants assert that the third-party, the defendant trustees, and the plaintiff breached their obligations and duties, alleging that (1) the plaintiff and the trustees knew, or should have known, the defendants were not in default and (2) the plaintiff and trustees violated contract and certain common law duties. More specifically, the defendants claim that the trustees violated duties under the loan documents, failed to act impartially, failed to acquire the best price upon the sale, sold the property at an inadequate sale price, and, as they were never in default, should not have conducted the sale. They also contend that the trustees conducted the sale on a sham bid, knowing the defendants were not in default. The evidence at trial comprised the testimony of the plaintiff's representative, the two foreclosing trustees, and one of the defendant guarantors, John Gray.

Gray testified that, shortly after closing upon an annual renewal of the note in 2005, at the suggestion of the plaintiff's representative, John Talley, he paid two advance interest payments totaling $4,275. He stated he made the payments at Talley's urging without an agreement as to how the payments were to be applied. He made the payments on Talley's representation that a profit share plan connected with the loan needed financial assurances even though such payment was not required under the financing and deed of trust documents. He said he thought he could not be held in default because the two payments were held in reserve to prevent it. John Talley has since died, and his son John Talley has taken over the business. Relying on *Bayview Loan Servicing, Inc. v. Simmons*, 275 Va. 114, 654 S.E.2d 898 (2008), the defendants take the position that, due to the violations described, no right of foreclosure ever vested in the plaintiff.

The court does not agree with any of the defendants' assertions, namely (1) that they were not in default, (2) that the plaintiff and the trustees violated contract and/or common law duties, and (3) that the plaintiff exposed them to damages due to an improper acceleration of the note and initiating foreclosure.

The defendants rely on *Rohrer v. Strickland*, 116 Va. 755 (1914), for the proposition that the foreclosure and the trustees violated duties owed them in connection with the foreclosure. In *Rohrer*, the trustees conducted a foreclosure sale under a deed of trust, and the court found in favor of the borrower's request for credit in the amount of a resale. The court set aside the foreclosure sale on the ground that the sale price was unconscionable and unfair. The court, sitting in equity, found that a presumption of unfairness applies when the property was auctioned at one-third of market value. The court reasoned that, as to both the borrower and the lender, the trustee is due to act reasonably and diligently to effect the best selling price and that a court of equity can act to set aside trustee actions for reasons of an inadequate purchase price.

In the applicable statute here, found in Va. Code § 55-59, the General Assembly has set forth that the duties and obligations of a trustee in foreclosure are defined by the contract, that is, those set out in the deed of trust. If not so defined therein, the Statute lists certain provisions that are deemed controlling when the deed of trust does not otherwise provide. *Colonial Inv. Co. v. Cherrydale*, 194 Va. 454, 73 S.E.2d 414 (1952). The duties and obligations, which the defendants contend apply, are not set out in the deed of trust nor in the Statute. For example, the defendants contend, though not delineated in the deed of trust, that the trustees share a duty to ensure that more than one or that some sufficient number of prospective buyers appear at the sale as ready, willing, and able to purchase at a presumed price. Va. Code § 55-59 does not mention this, nor is it stated in the deed of trust.

A similar statute in place as early as 1887 under the designation of Sec. 5167 does not contain any such language. This is the only early statutory reference the court could find relating to trustee duties under a deed of trust. The court has not been cited to a statute governing the *Rohrer* proceedings. The *Rohrer* court decision, while it does not state that the trustees' duties it found were provided in the deed of trust, makes reference to duties otherwise imposed by law. The annotations to Sec. 5167, however, cite to the proposition that the trustee, as agent for both parties, has a duty to sell the estate to the best advantage of both. *Muller v. Stone*, 84 Va. 834, 6 S.E. 223, 10 Am. St. Rep. 889 (1888); *Lane v. Tidball*, 21 Va. (Gilmer) 130 (1820); *Gay v. Hancock*, 22 Va. (1 Rand.) 72 (1822); *Miller v. Argyle*, 32 Va. (5 Leigh) 460 (1834). So the *Rohrer* court must have read into the foreclosure sale certain common law obligations the case describes. When the current version of the law in § 55-59 is examined, the court is left to believe that the General Assembly has since intended otherwise. Furthermore, in a later equitable case, the Court has held that a borrower was not entitled to relief on allegations of unpropitious time of sale and an available better price. *Williams v. Jones*, 165 Va. 398, 182 S.E. 280 (1935). Here again, neither the Deed of Trust and Guaranty Agreement nor the Statute lists any of the

duties the defendants would have imposed on the trustees in foreclosure sales.

Turning next to the defendants' contention regarding default, both the Deed of Trust and the Guaranty Agreement describe default as a failure to pay the agreed upon amounts at the agreed upon time on a monthly basis. Gray stated that, upon his tender of the two advance interest payments, there was no agreement regarding how the payments were to be applied and that he understood they were not required under the financing and deed of trust documents. But Gray did say he believed the reserve payments precluded his being held in default. The papers describe the Noteholder's rights in the event of default as follows:

> Acceptance by the Noteholder of any portion or all of any sum payable hereunder whether before, on, or after the due date of such payment, shall not be a waiver of the Noteholder's right either to require prompt payment when due of all other sums payable hereunder or to exercise any of Noteholder's rights, powers, and remedies hereunder or under the other loan documents.

Under *Bayview*, the court applied principles of contract construction to the provisions of the deed of trust. *Bayview Loan Servicing v. Simmons*, 275 Va. at 120-22. Gray's beliefs do not hold sway over the contractual terms. Applying those principles here, the defendants were held properly in default, and the amounts due accelerated, triggering foreclosure.

For the foregoing reasons, the plaintiff shall have judgment for the deficiency and have judgment of the defendant's counterclaim. The trustees have judgment in the third-party claim.