## Richmond

LAWRENCE C. MUSGROVE AND GEORGE W. REED, JR. v. RALPH A. GLASGOW.

April 24, 1972.

Record No. 7584.

Present, All the Justices.

W. G. Creasy, for appellants.

James W. Flippen, for appellee.

HARMAN, J., delivered the opinion of the court.

The trial court entered a decree holding a trustee's sale to be null, void and of no effect. We must determine whether the evidence is sufficient to sustain that decree.

The defendants, Lawrence C. Musgrove (Musgrove) and George W. Reed, Jr., (Reed), were the noteholder and trustee respectively under the deed of trust. Ralph A. Glasgow (Glasgow) was the owner of the equity of redemption in the property at the time of sale. All of the parties are practicing attorneys in Roanoke.

The deed of trust under which the sale was conducted was executed by B. A. Epperly (Epperly) on September 27, 1965, and conveyed a parcel of land in Roanoke County to Reed, Trustee, to secure payment of a note in the amount of $800.00 payable to "legal holder" on September 27, 1966. Musgrove was at all times the holder of this note.

Glasgow became a junior lienholder on the property in October, 1965. On October 29, 1965, Glasgow wrote Reed a letter to which Reed never responded. This letter read as follows:

\* \* \*

"Please write me given (sic) me amount of note, date of note, how payable, amount in default and unpaid balance.

"Trusting you will grant this request, I remain . . . ."

In December, 1965, Epperly conveyed his equity of redemption in the property by deed to Glasgow.

In the spring of 1966, at least six months before the trustee's sale, Glasgow and Reed had a conversation in which Reed advised Glasgow that Musgrove was the holder of the note. Glasgow had also learned this from another person. In a later conversation prior to sale, Glasgow advised Reed that he was "prepared to pay the note."

The trial court found that Glasgow never contacted Musgrove directly at any time prior to the sale.

While Reed and Musgrove shared a suite of offices and jointly employed a secretary, each had his own law practice and they were not partners.

When the $800.00 note became due on September 27, 1966, it was not paid. Musgrove wrote Epperly demanding payment and advising him that foreclosure would follow if the note was not paid within a week.

The note was not paid within that time and Reed, at Musgrove's direction, proceeded to advertise the property. The sale was held at the time and place advertised with only Reed and Musgrove present. Musgrove tendered a bid of $800.00, the amount due him on his note, and became the purchaser. On October 24 Reed prepared, executed and delivered a trustee's deed to Musgrove for the property.

Glasgow concedes that the sale was advertised as required by the deed of trust. He also concedes that the sale was held at the time and place advertised. He denies, however, that he saw the advertisement of sale and his testimony is that he did not know of the sale prior to the time it occurred.

On November 3 Glasgow wrote Reed and submitted an "upset bid" of $1,200.00. Reed did not reply to this letter. Glasgow filed objections with the Commissioner of Accounts to Reed's settlement as trustee but these objections were overruled. Thereafter suit was instituted.

The trial court found the fair market value of the property to be $2,400.00 on the date of sale. While Musgrove denied knowledge of Glasgow's interest in the property prior to sale, the trial court accepted Glasgow's testimony that he received a phone call from Musgrove on the day of the sale "telling him (Glasgow) of the foreclosure and that he (Musgrove) had gotten a big bargain." The trial court held that Musgrove, because of his connection with Reed, was chargeable with knowledge of the information received by Reed in his written and oral communications with Glasgow.

The court also found Reed, the trustee, did not act impartially in making the sale. This finding was based on Reed's failure to answer Glasgow's letter of October 29, 1965, on Reed's failure to notify Glasgow of the sale and that the sale was concluded for $800.00, which was only 1/3 the fair market value of the property.

Glasgow concedes the evidence to be insufficient to establish actual fraud on the part of the defendants. He argues, however, that the inadequate sale price coupled with substantial inequitable circumstances was sufficient to justify the trial court's action in invalidating the sale. We disagree.

The trial court relied on the letter from Glasgow to Reed of October 29, 1965, and the subsequent conversations between Reed and Glasgow to hold the failure of Reed to notify Glasgow of the sale an inequitable circumstance. But such notice to the grantor or his successor in title is not required in the absence of an express requirement for notice in the deed of trust. Code § 55-59 (6).

All of the information requested by Glasgow's letter, including the due date of the note, was contained in the deed of trust which Glasgow found when he examined Epperly's title. For at least six months before sale Glasgow knew Musgrove to be the holder of the note. Nevertheless, he never contacted Musgrove nor did he pay the note when it became due on September 26, 1966.

Here we have a sale which was conducted pursuant to the provisions of the deed of trust. It was regular in all respects. Musgrove's bid represented the entire amount of the debt and he became the purchaser. No fraud was alleged or proved. There was no showing that the trustee breached any duty imposed upon him. In such circumstances we hold the sale to be free from attack for inadequacy of price. See Bailey v. Hendrickson, 25 N.D. 500, 143 N.W. 134 (1913).

The facts here are far different from those in Rohrer v. Strick-

*land*, 116 Va. 755, 82 S.E. 711 (1914), and *Linney* v. *Normoyle*, 145 Va. 589, 134 S.E. 554 (1926), where the noteholder purchased the security property for far less than the amount of the debt.

*Reversed and dismissed.*