PRESENT: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Koontz, S.J.

JOYCE SQUIRE, ADMINISTRATOR OF THE
ESTATE OF KIM SQUIRE KING, ET AL.

OPINION BY
v.    Record No. 130494          JUSTICE CLEO E. POWELL
                                       April 17, 2014
VIRGINIA HOUSING DEVELOPMENT
AUTHORITY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

In this appeal, we must decide whether the trial court properly sustained the defendants' demurrers in a suit filed by Kim Squire King[1] after the foreclosure sale of her home.  We hold that the trial court erred in sustaining the demurrers as to King's claims of breach of contract (deed of trust) against Virginia Housing Development Authority ("VHDA") and breach of fiduciary duty against Evans & Bryant, PLC ("Evans") as substitute trustee, for failure to hold a face-to-face meeting prior to foreclosure.  The trial court did not, however, err in sustaining demurrers against King's allegation of breach of contract (forbearance agreement) and her requests for declaratory judgment, rescission, and to quiet title.

I.  FACTS AND PROCEEDINGS

On August 15, 2002, King purchased property at 513 Fauquier

---

[1] We granted a motion by Joyce Squire, Administrator of the Estate of Kim Squire King, Kenesha Felton and Kaziah Anderson to be substituted for Kim Squire King.

Street in Norfolk, Virginia for $101,500. To purchase the parcel, King executed a promissory note to VHDA in the amount of $86,939. The note was secured by a deed of trust.

In 2008, King lost her full-time job and was forced to work multiple part-time jobs as replacements. A year later, King began to lose hours at her part-time jobs and by March 2010, she had fallen behind in payments due under the note.

King contacted VHDA in June 2010 and arranged for a special forbearance agreement through August 30, 2010, in which it was agreed that King was $4,114.35 in arrears. The agreement deemed these unpaid delinquent payments from March 1 through August 2010 to be "suspended." In this agreement, VHDA also agreed to reevaluate King's loan in August 2010 "with the expectation the loan will be reinstated by paying the delinquent amount due in full or utilizing other loss mitigation programs to bring the account current." The agreement placed the responsibility upon King "to contact VHDA when the forbearance ends or if [her] current financial circumstances change[d]." The agreement also provided that "[u]pon the breach of any provision of this agreement, VHDA may terminate this agreement and, at the option of VHDA, institute foreclosure proceedings according to the terms of the note and security instrument without regard to this instrument."

In September 2010, King contacted VHDA to make a payment

2

and learned that VHDA would be foreclosing upon her home. VHDA appointed Evans as substitute trustee under the deed of trust on November 8, 2010. King then filed for Chapter 13 bankruptcy in November 2010. On February 17, 2011, the bankruptcy court, at King's request, dismissed her petition without prejudice. In February, March and April 2011, King paid her monthly payments to VHDA. In May 2011, King made another payment, which VHDA returned and informed her that her loan was in foreclosure. She was instructed to contact Evans for reinstatement.

On October 24, 2011, an agent of A.J. Potter Investments, LLC ("Potter"), the subsequent buyer of her foreclosed home, came to King's home to inspect it. King informed the agent that the situation was "in litigation."

Four days later, Evans conducted the foreclosure sale of King's home. Her home, which the city of Norfolk had assessed at $223,000, was purchased by Potter for $115,200.

Following the sale of her home, King filed a complaint against VHDA, Evans, and Potter. She alleged that paragraphs 9 and 18 of her deed of trust required the lender to comply with certain federal regulations to accelerate the debt and foreclose on King's home. She alleged that these regulations prevented VHDA from foreclosing until (a) she was three months in arrears and (b) it had, or made reasonable efforts to arrange, a face-to-face meeting with her. She alleged that VHDA breached the

3

deed of trust by foreclosing before it fulfilled these requirements. Similarly, King alleged that Evans breached its fiduciary duty by foreclosing when neither of the requirements had been met. In addition, King alleged that VHDA breached the terms of the forbearance agreement by not accepting her attempts to repay the delinquent amount and by not implementing another loss mitigation program because "she was not employed on a full-time basis." King alleged that these breaches resulted in the foreclosure sale of her home and caused her to incur other monetary damages.

King also contended that because VHDA did not comply with the federal requirements, Evans was not authorized to sell the home and therefore the October 28, 2011 sale of the property was not a valid sale. She also sought a declaratory judgment that Potter was not a bona fide purchaser. King sought to rescind the foreclosure sale and quiet title in her favor.

In response to these claims, VHDA, Evans and Potter filed demurrers. In a September 6, 2012 letter opinion, the trial court held that King's pleading demonstrated that she was more than three months in arrears and that the pleadings demonstrated that no litigation was pending at the time of the foreclosure sale. The trial court further held that "the failure to conduct or arrange for the face-to-face meeting, although perhaps a sufficient ground to enjoin a foreclosure sale, for the

4

imposition of a regulatory sanction, or for an award of nominal damages, is not a sufficient ground to award compensatory damages or to set aside a completed foreclosure sale to a stranger to the deed of trust without any notice or defect in the sale, especially when the plaintiff has not alleged she was ever ready and able to redeem the property or cure the default before the sale."

King obtained leave and subsequently filed a second amended complaint in which King added Monarch Bank, Potter's lender, as a defendant. The defendants again filed demurrers. As to King's allegations that VHDA breached the deed of trust and Evans breached its fiduciary duty, the trial court held that King's second amended complaint showed that she was at least five months in arrears and she failed to plead when and how she tendered a lump sum to bring her account current. The trial court granted the demurrer on the breach of contract (forbearance agreement) claim because the court ruled that King failed to plead that she paid the delinquent amount in full in compliance with the agreement or used other mitigation procedures. In response to her claims for equitable relief, the trial court reaffirmed its September 6, 2012, letter opinion. This appeal followed.

## II.  ANALYSIS

"A trial court's decision sustaining a demurrer presents a question of law which we review de novo."  Harris v. Kreutzer, 271 Va. 188, 196, 624 S.E.2d 24, 28 (2006).  It is well established that "[a] demurrer accepts as true all facts properly pled, as well as reasonable inferences from those facts."  Steward v. Holland Family Props., LLC, 284 Va. 282, 286, 726 S.E.2d 251, 253-54 (2012).

> At the demurrer stage, it is not the function of the trial court to decide the merits of the allegations set forth in a complaint, but only to determine whether the factual allegations pled and the reasonable inferences drawn therefrom are sufficient to state a cause of action.  Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors of Charles County, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000).  To survive a challenge by demurrer, a pleading must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."  Eagle Harbor, L.L.C. v. Isle of Wight County, 271 Va. 603, 611, 628 S.E.2d 298, 302 (2006) (internal quotation marks omitted).

Friends of the Rappahannock v. Caroline County Bd. of Supervisors, 286 Va. 38, 44, 743 S.E.2d 132, 135 (2013).

### Three Months in Arrears

Squire argues that the trial court erred in sustaining the demurrer because the foreclosure was improper as King was not three months in arrears.  However, she admitted in her complaint that she did not make payments in May, June, July and August of

6

2010 and did not bring this delinquency current or arrange for alternative financing before the expiration of the forbearance agreement. Thus, these facts, taken as pled by King, were sufficient to prove that she was more than three months in arrears on her mortgage. Therefore, the trial court did not err in so ruling.

## Ability to Pay Amount in Arrears

Squire contends that King averred in her second amended complaint that she had the ability to cure the arrearage in full. King's complaint averred that she offered to pay the delinquent amount in September 2010. The trial court held that she did not state a claim because the agreement required her to pay the amount in arrears in full by August 2010 or "utiliz[e] other loss mitigation programs to bring the account current." King's attempts to bring her loan current were taken beginning in September 2010, <u>after</u> the forbearance agreement expired. Furthermore, the trial court found that the deed of trust allowed a borrower to tender a lump sum to bring her account current, but King did not plead that she tendered a lump sum amount for all payments alleged to be owed. Thus, this holding by the trial court is not in error.

## Face-to-face Meeting

Squire also argues that the trial court erred in sustaining the demurrer because VHDA and Evans did not have the authority

to foreclose without first conducting the face-to-face meeting, which they failed to do.

"A trustee's power to foreclose is conferred by the deed of trust. That power does not accrue until its conditions precedent have been fulfilled. The fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent." Mathews v. PHH Mortgage Corp., 283 Va. 723, 731, 724 S.E.2d 196, 199 (2012) (citations omitted).

> A deed of trust is construed as a contract under Virginia law, see, e.g., Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'ship, 255 Va. 356, 365, 497 S.E.2d 747, 753 (1998), and we "consider the words of [a] contract within the four corners of the instrument itself." Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

Id. at 733, 724 S.E.2d at 200-01. We

> construe [it] as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

Uniwest Constr., 280 Va. at 440, 699 S.E.2d at 229 (quoting PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626

8

S.E.2d 369, 372-73 (2006)).

Here, as in Mathews, the deed of trust incorporated certain regulations of the United States Department of Housing and Urban Development ("HUD"), and mandated that foreclosure was not permitted where it violated such HUD regulations. One regulation requires that, absent certain exceptions not relevant here, "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced." 24 C.F.R. § 203.604(b). The regulations also require that "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements [including the face-to-face interview] have been met." 24 C.F.R. § 203.606(a) (emphasis added). This is so because the purpose of the face-to-face meeting is to "reduc[e] the incidence of foreclosure" by providing an environment in which the "mortgagee employee can often determine the cause of the default, obtain financial information[,] establish a repayment schedule[,] and prevent foreclosure by influencing the payment habits of mortgagors."

9

U.S. Department of Housing and Urban Development, Handbook 4330.1 Rev-5: Administration of Insured Home Mortgages § 7-7(C)(1) (1994), available at http://portal.hud.gov/hudportal/ documents/huddoc?id=43301c7HSGH.pdf (last visited April 7, 2014). Thus, the deed of trust required VHDA to have or make reasonable efforts to arrange a face-to-face meeting with King as a condition precedent to foreclosure.  VHDA did neither.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

> When a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer.  Hunter v. Burroughs, 123 Va. 113, 129, 96 S.E. 360, 365 (1918). And, even though a . . . complaint may be imperfect, when it is drafted so that [the] defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer; if a defendant desires more definite information, or a more specific statement of the grounds of the claim, the defendant should request the court to order the plaintiff to file a bill of particulars. Alexander v. Kuykendall, 192 Va. 8, 14-15, 63 S.E.2d 746, 749-50 (1951).

CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431

S.E.2d 277, 279 (1993). King pled that VHDA failed to have, or make reasonable efforts to arrange, a face-to-face meeting with her. She further pled that VHDA's failure was a breach of contract. She also pled that Evans breached its fiduciary duty by holding a foreclosure sale before the requirement was fulfilled. She claimed these breaches

> caused Plaintiff's home to be sold at the October 28, 2011 foreclosure sale which resulted in Plaintiff's loss of Plaintiff's home which was assessed by the City of Norfolk as having a value of $223,000.00, along with Plaintiff also incurring $35,420.84 in alterations on her home performed by Potter; $8,629.16 claimed by VHDA in late fees and costs attributable to the disputed foreclosure proceedings; moving expenses to a temporary location in the amount of $3,569.99, accumulating damages of $1,270.00 in monthly living expenses since April, 2012, and negative impacts on her Equifax, Experian, and TransUnion credit ratings related to this controversy.

Indeed, her allegations in her complaint comport with the very purpose of the face-to-face meeting requirement.

The facts she pled and the damage that she alleged from the failure to conduct a face-to-face meeting were sufficient to "inform a defendant[s] of the nature and character of the

11

claim."[2]  Id.  Thus, the trial court erred in sustaining the demurrer filed by VHDA as to King's breach of contract (deed of trust) claim and the demurrer filed by Evans as to King's breach of fiduciary duty claim.  Therefore, we reverse and remand as to Counts 1 and 3 alleged in King's second amended complaint.

## Rescission of the Foreclosure Sale

Squire argues that the sale should be rescinded. Specifically, she argues that (1) the sale price at foreclosure was so far below the home's assessed value that it shocked the conscience and (2) Potter cannot be a bona fide purchaser for

---

[2] Notably in Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 654 S.E.2d 898 (2008), where we affirmed an award of damages against a lender in a post-foreclosure situation,

> [the borrower] alleged that . . . the Deed
> of Trust required a pre-acceleration notice
> of breach and the action required to cure
> the breach prior to acceleration of any
> indebtedness secured by the Deed of Trust
> and that . . . the Deed of Trust required
> that notice be delivered or sent by
> certified mail.  [The borrower] then alleged
> neither personal nor certified mail delivery
> of the pre-acceleration notice was made and
> therefore no right to accelerate the
> indebtedness secured by the Deed of Trust
> had accrued.  Consequently, [the borrower]
> claimed no right to foreclose had matured.

Id. at 116, 118, 654 S.E.2d at 898, 899.  The borrower did not allege what she would have done to prevent the foreclosure sale had she received notice.

12

value because she notified it of a problem with the sale.  King cites Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 121-22, 654 S.E.2d 898, 901 (2008), and Mathews, 283 Va. at 736, 724 S.E.2d at 202, where we addressed a pre-foreclosure situation in which a borrower sought a declaratory judgment that a foreclosure sale would be void, in support of her argument that a material breach of the FHA regulations incorporated into a deed of trust should be grounds to set aside a foreclosure sale. Neither of these cases addresses the situation presented here, where a borrower seeks to set aside a completed foreclosure sale to an independent third party.

Whether rescission is a proper remedy is within the sound discretion of the trial court.  Bolling v. King Coal Theatres, Inc., 185 Va. 991, 996, 41 S.E.2d 59, 62 (1947) (quoting Dobie v. Sears, Roebuck & Co., 164 Va. 464, 470, 180 S.E. 289, 291 (1935)). In general, a judicial sale "'will not be set aside for mere inadequacy of price unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness.'"  Schweitzer v. Stroh, 182 Va. 842, 848, 30 S.E.2d 689, 692 (1944) (quoting Dunn v. Silk, 155 Va. 504, 509, 155 S.E. 694, 695 (1930)).  The burden to prove gross inadequacy is on the person advancing such argument. Jones v. Jones, 249 Va. 565, 573, 457 S.E.2d 365, 370 (1995). In the deed of trust foreclosure context, however, where, as

13

here, "[t]here is no evidence that the trustee was guilty of any fraud," and no "suggestion that he showed any partiality toward or was in collusion with the purchaser," even an inadequate price would not necessitate that the sale be set aside. Cromer v. DeJarnette, 188 Va. 680, 687-88, 51 S.E.2d 201, 204 (1949). Absent evidence of fraud, a sale will not be set aside for an inadequate price. Musgrove v. Glasgow, 212 Va. 852, 854, 188 S.E.2d 94, 96 (1972).

Next, King argues that Potter was not a bona fide purchaser because it was on notice that she disputed the foreclosure sale.

> "Notice is actual when the purchaser knows of the existence of the adverse claim, or perhaps where he is conscious of having the means of knowledge and yet does not use them; and it is immaterial whether his knowledge results from direct information or is gathered from facts and circumstances. The information must proceed, however, from some person interested, or otherwise likely to be well informed, or from someone who gives specific and definite statements . . . . Vague reports on general assertions, especially from persons not interested in the property and who, therefore, may not be well informed, will not affect the purchaser's conscience."

Vicars v. Sayler, 111 Va. 307, 312, 68 S.E. 988, 990 (1910) (quoting 2 Raleigh C. Minor, The Law of Real Property § 1412 (1908)).

The conversation between King and Potter's agent was simply not enough to negate Potter's status as a bona fide good faith

14

purchaser, especially where, as here, the assertion allegedly reported to the prospective purchaser is that the property was "in litigation." King's complaint, on its face, demonstrates that the property was not subject to litigation at the time of the foreclosure sale, as the sale was held on October 28, 2011, and King did not file suit until December 19, 2011. Moreover, she did not file a lis pendens for seven months after filing suit. Thus, King failed to plead sufficient facts that would have required the trial court to set aside the foreclosure sale. Therefore, the trial court did not err in sustaining the defendants' demurrers on the rescission claims.[3]

## Quiet Title

Finally, King sought an order to quiet title. "[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Maine v. Adams, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009). A person seeking to quiet title must plead that she has superior title over the adverse claimant. Thus, in order for a claim for quiet title to survive demurrer in the foreclosure context, the

---

[3] As we declined to address whether setting aside a completed foreclosure sale may be an appropriate remedy in Bayview and Mathews because the borrowers did not seek it there, we decline to do so in this case because King did not plead sufficient facts.

15

former homeowner must plead that she has fully satisfied all legal obligations to the real party in interest.  See Tapia v. U.S. Bank, N.A., 718 F.Supp.2d 689, 700 (E.D. Va. 2010), aff'd, 441 Fed. Appx. 166 (4th Cir. 2011).  Here, King's complaint reveals that she had not satisfied all legal obligations to the party in interest, VHDA.  Indeed, her failure to satisfy part of her legal obligations to VHDA is the very essence of the suit and this appeal.  As such, the trial court did not err in sustaining the defendants' demurrers on the quiet title claims.

### III.  CONCLUSION

The facts alleged in King's complaint demonstrate that she was more than three months in arrears on her mortgage payment obligations and that she had not attempted to cure the arrearage during the pendency of the forbearance agreement.  Thus, the trial court did not err in sustaining VHDA's demurrer as to King's breach of contract (forbearance agreement) claim. Similarly, the facts and allegations made by King are not sufficient to state a claim for rescission and, therefore, the trial court did not err in sustaining defendants' demurrers. King's complaint revealed that she had not satisfied her legal obligations to VHDA and, therefore, the trial court did not err in sustaining the defendants' demurrers as to her claim to quiet title.

16

However, King's complaint alleged that VHDA breached the deed of trust by failing to have, or make reasonable efforts to arrange, a face-to-face meeting prior to initiating foreclosure. It also alleged that Evans breached its fiduciary duty in conducting the foreclosure sale. Further, it alleged that she incurred damages as a result of these breaches. As such, it was sufficient to withstand demurrer and the trial court erred in sustaining VHDA's demurrer as to King's breach of contract (deed of trust) claim and Evans' demurrer as to King's breach of fiduciary duty claim. Therefore, the judgment of the trial court will be affirmed in part, reversed in part, and this case will be remanded for further proceedings consistent with this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

CHIEF JUSTICE KINSER, with whom JUSTICE LEMONS and JUSTICE McCLANAHAN join, concurring in part and dissenting in part.

The purpose of a demurrer is to determine whether a complaint states a cause of action upon which the requested relief may be granted. <u>Assurance Data, Inc. v. Malyevac</u>, 286 Va. 137, 143, 747 S.E.2d 804, 807 (2013). In other words, "[a] demurrer tests the legal sufficiency of facts alleged in pleadings." <u>Id.</u> (internal quotation marks omitted). I conclude that Counts 1 and 3 in the second amended complaint fail to

17

state a cause of action for breach of contract and breach of fiduciary duty, respectively.  The allegations by Kim Squire King in the second amended complaint are legally insufficient to show that the foreclosure was caused by the failure to hold a face-to-face meeting.[1]  Thus, I respectfully dissent as to that portion of the majority opinion.  I concur in the majority opinion on the other issues.

At the outset, for the reasons explained in my concurring opinion in Mathews v. PHH Mortgage Corp., 283 Va. 723, 742-43, 724 S.E.2d 196, 206-07 (2012), the alleged facts in King's second amended complaint do not accurately state the 30-day face-to-face meeting requirement set forth in 24 C.F.R. § 203.604(b).  That provision requires a mortgagee to conduct a face-to-face meeting with a mortgagor under two separate circumstances.  First, the meeting must occur "before three full monthly installments due on the mortgage are unpaid."  24 C.F.R. § 203.604(b).  Second, a mortgagor must hold the meeting "at least 30 days before foreclosure is commenced" if "default occurs in a repayment plan arranged other than during a personal interview."  Id.

In the second amended complaint, King asserted no allegation that the Virginia Housing Development Authority

---

[1] King is now deceased.  See supra note 1 (majority

18

(VHDA) failed to hold the meeting before three full monthly installments were unpaid, or that a default occurred "in a repayment plan arranged other than during a personal interview." Id. As was the case in Mathews, "by omitting relevant portions of 24 C.F.R. § 203.604(b), [King] [was] able to allege that the mortgagee failed to conduct a face-to-face meeting with [her] 30 days before commencing foreclosure, a requirement not set forth in the plain terms of that sub-section." Mathews, 283 Va. at 744, 724 S.E.2d at 207 (Kinser, J., concurring). However, like the mortgagee in Mathews, VHDA did not assert this ground in its demurrer, and this Court, therefore, cannot consider it on appeal. Id.

Turning now to the breach of contract claim, I find a lack of uniformity among courts across the country as to the ability of a mortgagor to file a cause of action based on a violation of regulations promulgated by the Secretary of the United States Department of Housing and Urban Development (HUD). "[T]he weight of authority around the country roundly rejects the notion that . . . HUD regulations support either direct or implied private causes of action for their violation." Wells Fargo Home Mortgage, Inc. v. Neal, 922 A.2d 538, 543-44 (Md. 2007) (collecting cases); accord Moses v. Banco Mortgage Co.,

opinion).

19

778 F.2d 267, 272 n.2 (5th Cir. 1985) (citing courts that "have refused to create a right of action for private parties who wish to sue to enforce [the National Housing Act] or regulations promulgated thereunder").  This is in accord with decisions of the United States Supreme Court holding that courts will not imply such private rights unless the statute under which regulations are issued itself reveals that Congress intended such an action to be privately enforceable.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979).

Courts are also generally in agreement that although "the HUD regulations do not create an implied cause of action for damages," such regulations "may be used defensively as an affirmative defense to a judicial foreclosure action instituted by the creditor."  Pfeifer v. Countrywide Home Loans, Inc., 150 Cal. Rptr. 3d 673, 687 (Cal. Ct. App. 2012) (citing cases); see also Federal Land Bank of Saint Paul v. Overboe, 404 N.W.2d 445, 448 (N.D. 1987) ("[F]ederal regulations which have been held to not imply a private cause of action may nevertheless afford a basis for an equitable defense to a foreclosure action."); Lacy-McKinney v. Taylor, Bean & Whitaker Mortgage Corp., 937 N.E.2d 853, 861-64 (Ind. Ct. App. 2010) (holding that noncompliance with HUD regulations, such as the face-to-face meeting requirement of 24 C.F.R. § 203.604(b), can be used as an affirmative defense in a mortgage foreclosure action); Pfeifer,

20

150 Cal. Rptr. 3d at 686-89 (same).

Courts are split, however, on the question whether a mortgagor may maintain a post-foreclosure breach of contract action based on a mortgagee's non-compliance with HUD regulations, even when the HUD regulations are incorporated in a deed of trust. Those jurisdictions that have held that a mortgagor cannot maintain a breach of contract action have done so on differing grounds. For example, in Wells Fargo, 922 A.2d at 545-47, the court stated that "a mortgagor may not wield as a sword the HUD regulations alluded to in a mandatory [Federal Housing Act] form deed of trust" because the regulations are not a "voluntarily assumed" element of the contract and "do not control directly the relationship between the mortgagor and the mortgagee." Accord Hayes v. M&T Mortgage Corp., 906 N.E.2d 638, 642 (Ill. App. Ct. 2009) (adopting Wells Fargo rationale). In Dixon v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 137769, at *23 (E.D. Mich. September 25, 2012), the court rejected plaintiff's breach of contract action as "merely a restatement of claims for violations of the HUD regulations, an action that concededly does not exist." See also Pfeifer, 150 Cal. Rptr. 3d at 698 ("[W]e agree with the majority of courts that have concluded that the breach of these regulations do[es] not ordinarily provide a right of action.").

A minority of jurisdictions, however, have reasoned that

21

when HUD regulations are incorporated in a deed of trust, non-compliance can serve as the basis for a post-foreclosure breach of contract action against a mortgagee.  See Mullins v. GMAC Mortgage, LLC, 2011 U.S. Dist. LEXIS 35210, at *8 (S.D. W.Va. March 31, 2011) ("[P]laintiffs are suing under a straightforward state law contract theory," and not merely "to enforce HUD regulations under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer."); Baker v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 53704, at *15 (N.D. Tex. June 24, 2009) ("[F]ailure to comply with the regulations made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract.").  Our decisions in Mathews and Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 654 S.E.2d 898 (2008), seem to align us with the minority view.

Although it did not involve HUD regulations, Bayview addressed a post-foreclosure breach of contract action against a mortgagee for violating a deed of trust, which required the mortgagee to provide a "pre-acceleration notice of breach and the action required to cure the breach prior to acceleration of any indebtedness secured by" the deed of trust.  275 Va. at 118, 654 S.E.2d at 899.  The deed of trust required that notice be delivered or sent by certified mail.  Id.  The mortgagor

asserted that the required notice had not been made and that the right to accelerate the indebtedness and to foreclose therefore had not matured. Id. The trial court awarded the mortgagor damages representing her loss of equity in her real property after the mortgagee had foreclosed. Id. at 119, 654 S.E.2d at 900.

On appeal, the only issue was whether under Code § 55-59.1(A), the mortgagee's notice of proposed foreclosure sale effectively exercised the right of acceleration in the deed of trust. Id. We concluded that it did not because the parties had expressly agreed in the deed of trust that "no right of acceleration would be in existence to exercise . . . until the condition precedent of providing the pre-acceleration notice had been satisfied." Id. at 121, 654 S.E.2d at 901. Because the mortgagee failed to give the required notice, it "had not acquired the right to accelerate payment." Id. Thus, we affirmed the trial court's judgment awarding damages to the mortgagor. Id. at 122, 654 S.E.2d at 902.

In Mathews, we did, however, address HUD regulations incorporated in a deed of trust, but in the context of a pre-foreclosure declaratory judgment action. 283 Va. at 728-29, 724 S.E.2d at 197-98. In the complaint, the mortgagors sought a declaratory judgment that the impending foreclosure sale would be void because the mortgagee had not complied with the face-to-

face meeting requirement in 24 C.F.R. § 203.604(b).  Id.  We held that the HUD regulations were incorporated in the deed of trust and "express[ed] the intent of the parties that the rights of acceleration and foreclosure do not accrue under the [d]eed of [t]rust unless permitted by HUD's regulations."  Id. at 734, 724 S.E.2d at 201.  "[T]he face-to-face meeting requirement," therefore, was "a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the [d]eed of [t]rust."  Id. at 736, 724 S.E.2d at 202.  We thus reversed the trial court's judgment sustaining the mortgagee's demurrer and remanded the case, allowing the mortgagors to proceed with their declaratory judgment action.  Id. at 741, 724 S.E.2d at 205.

Although our decisions in Mathews and Bayview suggest that we will allow a post-foreclosure breach of contract action against a mortgagee for failure to comply with HUD regulations incorporated in a deed of trust, neither of those decisions addresses the central issue raised by VHDA in its demurrer to King's breach of contract claim concerning the face-to-face meeting requirement: that King did not plead sufficient facts to show that her alleged damages were a direct result of VHDA's failure to conduct the face-to-face interview.  Mathews involved a pre-foreclosure declaratory judgment action and thus did not address the issue, and the mortgagee in Bayview did not raise

24

causation at trial or on appeal.  See Bayview, 275 Va. at 118,
654 S.E.2d at 899.

VHDA argues, as it did on the demurrer, that the second
amended complaint contains no factual allegations to demonstrate
that the foreclosure resulted from the failure to conduct a
face-to-face meeting with King or that she would have been
entitled to a loan modification or other avoidance measure had
the meeting taken place.  VHDA further argues that, unlike the
homeowner in Bayview who was unable to exercise her rights under
a deed of trust because she was not notified of the impending
foreclosure sale, King was aware of the foreclosure proceedings
and had the express authority under the deed of trust to
reinstate her loan and security instrument at any time, even
after foreclosure proceedings had been instituted, by tendering
all amounts required to bring her account current.

Like all plaintiffs in a breach of contract action, King
"bears the burden of establishing a causal connection between
the defendant's breach and the damages claimed."  Haass &
Broyles Excavators, Inc. v. Ramey Bros. Excavating Co. 233 Va.
231, 235, 355 S.E.2d 312, 315 (1987).  King's injury must be
"sustained in consequence of the wrongful . . . act,"
Westminster Investing Corp. v. Lamps Unlimited, Inc., 237 Va.
543, 546, 379 S.E.2d 316, 318 (1989) (internal quotation marks
omitted), and King has to establish that her damages "flowed

from [VHDA's] breach." Isle of Wight County v. Nogiec, 281 Va. 140, 149, 704 S.E.2d 83, 87 (2011). The causal connection between a defendant's breach and the alleged damages is an essential element of a breach of contract cause of action. Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Thus, to withstand a demurrer, King had to plead some fact to show the causal connection between VHDA's breach and the foreclosure.

In her second amended complaint, King pled that failure to provide the face-to-face meeting "caused [her] home to be sold," which resulted in the loss of her home, costs incurred by alterations done on the house, late fees and costs associated with the foreclosure proceedings, moving expenses, monthly living expenses after she moved from her home, and "negative impacts" on her credit rating. Even though King never disputed that she was in default under the terms of her loan agreement, she did not, however, allege what she would have offered to VHDA during a face-to-face meeting to avoid the commencement of foreclosure proceedings or that the lack of the meeting prevented her from exercising any of her rights under the deed of trust, in particular her right of reinstatement. As the majority correctly notes, the circuit court determined that the deed of trust permitted King to tender a lump sum to bring her account current but King never pled that she did so. Her alleged

26

monetary damages obviously flowed from the foreclosure, but nothing in King's second amended complaint shows that the foreclosure was "sustained in consequence of" the lack of the face-to-face meeting.  Westminster Investing Corp., 237 Va. at 546, 379 S.E.2d at 318 (internal quotation marks omitted). Stated differently, King pled absolutely no facts that, if proven at trial, would establish that the foreclosure resulted from the failure to have the face-to-face meeting.

In reviewing a ruling upon demurrer, this Court is required to accept as true all facts properly pled and all reasonable inferences arising from those facts, Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003), but we are not bound to accept conclusory allegations made without any factual support.  See Moore v. Maroney, 258 Va. 21, 23, 516 S.E.2d 9, 10 (1999).  King's "mere conclusory statement . . . does not satisfy the pleading requirement of alleging facts upon which relief can be granted" and is thus "insufficient to withstand a demurrer."  Dean v. Dearing, 263 Va. 485, 490, 561 S.E.2d 686, 690 (2002); see also Van Deusen v. Snead, 247 Va. 324, 330, 441 S.E.2d 207, 211 (1994) (holding that plaintiff's "conclusory averment" was made without any supporting "factual allegation" and thus the sustaining of a demurrer was affirmed). When a plaintiff's cause of action "is asserted in mere conclusory language" and supported by "inferences that are not

27

fairly and justly drawn from the facts alleged," it is proper to sustain a defendant's demurrer. Bowman v. Bank of Keysville, 229 Va. 534, 541, 331 S.E.2d 797, 802 (1985).

Despite our well-established principles that a demurrer tests "the legal sufficiency of facts alleged in pleadings," Glazebrook, 266 Va. at 554, 587 S.E.2d at 591 (emphasis added), the majority is willing to overlook the absence of a single factual allegation to show that the foreclosure was caused by VHDA's breach of its obligation to have a face-to-face meeting. The majority is allowing a mortgagor in default to proceed to trial on the bald, conclusory assertion that the lack of the face-to-face meeting caused foreclosure under a deed of trust. I am not willing to do so.

I fully subscribe to the principle that "it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). Nevertheless, a plaintiff must allege sufficient material facts "to enable the court to find the existence of a legal basis for its judgment." Eagle Harbor, L.L.C. v. Isle of Wight County, 271 Va. 603, 611, 628 S.E.2d 298, 302 (2006).[2]

---

[2] This is not a negligence case in which, under Rule 3:18(b), "an allegation of 'negligence' is sufficient without specifying the particulars." Russo v. White, 241 Va. 23, 28,

Accepting as true the factual allegation that VHDA breached its legal obligation to have the face-to-face meeting, I conclude that the second amended complaint was not "made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" Hubbard v. Dresser, Inc., 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006) (quoting Moore v. Jefferson Hospital, Inc., 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)). King did not allege any fact to show that the foreclosure was "caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).[3]

For these reasons, I respectfully concur in part and dissent in part. I would affirm the circuit court's judgment sustaining the demurrers.

JUSTICE MIMS, concurring.

I join the majority opinion in its entirety. I write separately only to emphasize two key points in response to the opinion of Chief Justice Kinser concurring in part and dissenting in part.

---

400 S.E.2d 160, 163 (1991).

[3] King's claim for breach of fiduciary duty against Evans & Bryant, P.L.C., as substitute trustee, was also based on the failure to have a face-to-face meeting. Thus, for the same reasons, I conclude that King failed to allege sufficient facts to state a cause of action for breach of fiduciary duty.

29

First, like the Chief Justice's concurring opinion in Mathews v. PHH Mortgage Corp., 283 Va. 723, 742-43, 724 S.E.2d 196, 206 (2012) (Kinser, C.J., concurring), her concurrence in part and dissent in part in this case correctly observes that 24 C.F.R. § 203.604(b) ("the Regulation") requires a "face-to-face interview . . . or . . . reasonable effort to arrange such a meeting" before either (a) "three full monthly installments due on the mortgage are unpaid" or (b) "[i]f default occurs in a repayment plan arranged other than during a personal interview, . . . within 30 days of such default and at least 30 days before foreclosure is commenced."

Like the complaint in Mathews, id. at 743, 724 S.E.2d at 207, the second amended complaint in this case misquoted the Regulation. However, it alleged that "Paragraphs 9 and 18 of [the] Deed of Trust denied [Virginia Housing Development Authority ("VHDA")] acceleration of the debt and foreclosure on [King's] home without first complying with certain Federal regulations," specifically identifying the Regulation. It further alleged that "VHDA materially breached Paragraphs 9 and 18 of its Deed of Trust with [King] by accelerating the debt and foreclosing on [her] home without first complying with [the] aforesaid Federal regulations." It further invoked both of the Regulation's face-to-face meeting requirements by alleging that "VHDA failed to comply [because] there was no face-to-face

30

meeting . . . <u>at any point in time prior to foreclosure</u>."
(Emphasis added.)

On demurrer, courts accept a complaint's allegations of fact, not its conclusions of law.  <u>E.g.</u>, <u>Arogas, Inc. v. Frederick County Bd. of Zoning Appeals</u>, 280 Va. 221, 224, 698 S.E.2d 908, 910 (2010).  Courts deciding demurrers are not constrained by a plaintiff's characterization of the law. Accordingly, misquoting or misconstruing the Regulation is not fatal to King's claim.  The second amended complaint's allegation that acceleration and foreclosure occurred before the regulatory requirement was fulfilled, having specifically identified the Regulation, is sufficient to survive demurrer.

Second, in deciding a demurrer, courts consider not only the facts actually alleged in the complaint but also "all facts impliedly alleged[] and all reasonable inferences that may be drawn from such facts."  <u>Assurance Data, Inc. v. Malyevac</u>, 286 Va. 137, 143, 747 S.E.2d 804, 807 (2013).

The second amended complaint alleged that King "made several calls to Evans [& Bryant, PLC ("Evans")] making inquiry as to how she might have her loan reinstated, but Evans indicated to her that they needed to check with VHDA."  It further alleged that she "had $8,812.12 in savings and offered to use these funds to cure the disputed arrearage in an effort to have the loan reinstated."  It further alleged that she

31

"again contacted VHDA, but they only referred her to Evans."  It further alleged that she "again contacted . . . Evans and offered to cure the arrearage, but Evans responded that 'there was nothing that she could do.'"  It further alleged that she "was . . . in a financial position to cure the arrearage . . . in May 2011, and offered to do s[o], both directly to VHDA and indirectly through [Evans] but was refused by both."[*]

If we accept these allegations as true, as we must on demurrer, Arogas, 280 Va. at 224, 698 S.E.2d at 910, King had money with which to reinstate the loan and offered to pay it, but VHDA and Evans would not accept it or even tell her how much they wanted.  It is reasonable to infer from these facts that if VHDA had complied with the Regulation and met her face-to-face, she might have been able to pay the amount required, or at least to learn how much it was.  It therefore is reasonable to infer that VHDA's violation of the Regulation and breach of the deed of trust prevented her from reinstating her loan and resulted in

---

[*] Both the majority and the Chief Justice observe that King ostensibly had a contractual right under her deed of trust to reinstate her loan by paying the arrearage, plus any accrued interest and fees, in a lump sum.  However, she could not tender such a payment until she knew how much was required.  In her response to the defendants' demurrers, King asserted that she "called both VHDA and Evans in an effort to discover what it would cost to save her home, yet neither defendant provided this critical information."

a needless foreclosure, thereby causing her to lose the equity in her home.

I therefore concur with the holdings of the Court.